UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
DOMINICK J. SIANI,

                                 Plaintiff(s),                      **ORDER**
                                                                                  CV09-407 (JFB) (WDW)

       -against-

STATE UNIVERSITY OF NEW YORK at
FARMINGDALE, et al.,
                                 Defendant(s).
------------------------------------------------------------------X

**WALL, Magistrate Judge:**

     Before the court is a motion by the pro se plaintiff, Dominick Siani, seeking a "finding of adverse inference" based on the defendants' alleged spoliation of electronic records. DE[38]. The defendants opposed the motion, and, in response to a court order, filed further affidavits in opposition. A spoliation hearing was held on July 27, 2010. Having considered the motion papers, the affidavits and the testimony and evidence submitted at the hearing, I find that the motion must be DENIED. Also before the court is the plaintiff''s motion for additional depositions and permission to file a reply (DE[43]), made prior to the scheduling of the spoliation hearing. Because the hearing obviates the need for the relief sought, that motion is also denied, as moot.

## BACKGROUND

     General familiarity with this lawsuit is assumed. On this motion, the plaintiff argues that the defendants failed to preserve electronic evidence and that he is thus entitled to an adverse inference based on the spoliation of evidence. Throughout the discovery process, Siani raised issues of "gaps" in production of electronic messages, and now argues that parties Hubert Keen and Dudley Blossom and non-parties Marybeth Incandela and George LaRosa, employees of the

defendant college, deleted emails in contravention of their duty to preserve. The defendants argue that they observed all of their preservation obligations, and were under no duty to preserve every conceivable email, especially those of non-parties.

The "Anticipation of Litigation" and Litigation Holds

As will be discussed in greater detail later, a duty to preserve evidence "arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." *Zubulake v. UBS Warburg LLC ("Zubulake IV"),* 220 F.R.D.212, 216 (S.D.N.Y. 2003) (quoting *Fujitsu Ltd v. Federal Express Corp.*, 247 F.3d 423, 436 (2d Cir. 2001)). The relevant litigation here - the instant lawsuit - was filed on January 30, 2009, but the plaintiff argues that a duty to preserve evidence arose a year prior to that filing. He points, in this regard, to the fact that the defendants hired the law firm of Bond Schoenek & King in early 2008, and that Marybeth Incandela, in an affidavit filed in regard to an earlier motion in this action, explained that the firm was hired "to obtain legal advice in connection with issues arising under the Freedom of Information Law and employment issues, including those related to [Siani]." See DE[27]. Ms. Incandela noted Siani's earlier lawsuit and the fact that only two months after it was settled, he had "alerted the administration of his concerns regarding alleged ongoing age discrimination." *Id*.

Siani's earlier lawsuit against the defendants was settled in early November 2007. Siani states that on December 5, 2007 he became aware of "further violations of his rights under the ADEA and NYHRL," and on March 11, 2008 became aware of "acts of retaliation, harrassment and defamation." DE[38-2], ¶22. In a letter dated March 13, 2008, Siani informed defendants W. Hubert Keen (President of the college) and Beverly Kahn (Provost and Vice-President of

2

Academic Affairs), of his concerns about "Potential Discriminatory Behavior," noting his belief that there existed "facts and circumstances that support a prima facie case of age discrimination, disparate treatment and retaliation regarding . . . the designation of the Business Management Department Chair." He further noted that he would be pursuing several paths of investigation, including the SUNY Discrimination Complaint Procedure and FOIL requests. Siani Aff., ¶27 & Ex. 7. On March 17, 2008, he made a FOIL request for the electronic email activity logs of several of the defendants, including Kevin Rooney and Dudley Blossom. *Id.* at ¶25. In response, the college's FOIL officer advised Siani, *inter alia*, that Blossom was routinely deleting email files and he could not supply the records sought in regard to Blossom. *Id.* at ¶26. That FOIL request ultimately led to the filing of an Article 78 proceeding in the state court on July 29, 2008.

Prior to initiating the Article 78 proceeding, on June 27, 2008, Siani filed a complaint with the EEOC, and the defendants were notified of that claim by notice dated July 9, 2008. The notice informed the defendants, *inter alia*, of the duty to preserve personnel records made or kept pursuant to 29 CFR §1602.14. *Id*, Ex. 10. Defendant Kevin Rooney, an Assistant Vice President of Administrative Services who oversees the defendant college's IT department, reports that the college received notice that Siani had filed an EEOC claim on July 16, 2008.

On July 29, 2008, Rooney backed up the electronic mailboxes of all of the defendants named in the EEOC charge onto an external server so that he would be able to back up any accidental deletions. Rooney Aff., DE[38-10, Ex. C], ¶6; *see also* Hg. Transcript, DE[50], 50:8 - 51:11. He did not back up his own mailbox or those of any non-parties. On August 1, 2008, Rooney directed a litigation hold memo regarding Siani to 11 people, including, as relevant to this motion, Keen, George LaRosa, and Blossom. The memo was copied to Marybeth Incandela.

3

The memo noted that a duty to preserve relevant documents and records arises "as soon as it is 'reasonably foreseeable' that a claim may be asserted," and noted that since "Siani has filed an EEOC Notice of Discrimination Charge, that obligation unquestionably exists." Very specific instructions about the preservation of records, including emails, were set forth. DE[38-2], ¶¶31-34 & Ex.12.

On August 13, 2008, Joel Pierre-Louis, the college's Associate Counsel, sent a second Litigation Hold Letter to, among others, Keen, LaRosa, Rooney and Blossom. *Id.,* Ex.13. Although the copy of the letter before the court has been redacted on attorney-client privilege grounds, the face of the letter is described as a "Notice to Preserve Information/Freezing/Do Not Destroy Records, Documents, Paper & E-mails." Kevin Rooney reports that on February 11, 2009, a third litigation hold letter was issued by SUNY's counsel and distributed to all defendants, as well as Mr. LaRosa, with a copy to the Human Resources Department, that is, to Ms. Incandela. DE[38-10, Ex. C] at ¶9. Both Rooney and defense attorney Patricia Hingerton state that they reminded the defendants repeatedly about their preservation obligations, and Rooney did a second back-up of all defendants' electronic mailboxes other than his own, on September 11, 2009. *See* DE[38-10]; Rooney Aff., ¶9. Despite these litigation hold activities, the plaintiff asserts, emails were deleted and other litigation hold failures occurred.

Gaps and Deletions in Electronic Mail Records

The plaintiff recounts relevant discovery activity in this litigation, and reports that when he received the defendants' response to his document demands in June 2009, he "discovered numerous discrepancies in comparing the e-mails (identified as being relevant) on the electronic activity logs . . . with the actual documents produced." Siani Aff., DE[38-2], ¶¶37-38. In a letter

4

dated October 23, 2009, Siani notified the defendants of perceived time gaps in the electronic activity logs. *Id.*, ¶39, Ex. 15.  The disputes over the "gaps" were eventually largely resolved by the parties, but on this motion Siani raises issues regarding the deletion of emails by four individuals: (1) non-party Marybeth Incandela, Director of Human Resources at the defendant college; (2) non-party George LaRosa, Senior Vice President and Chief Financial Officer; (3) defendant Hubert Keen, President of the college; and (4) defendant Dudley Blossom, Chair of the Business Management Department.

The Incandela Emails: The plaintiff reports that Marybeth Incandela deleted emails and cannot produce electronic documents for the period April 20, 2007 to December 31, 2008 for sent email logs and April 20, 2007 to January 21, 2009 for received email logs.  She had not been named on the litigation hold lists issued by defendants, but allegedly had received copies of at least one of them.  In her deposition testimony on January 12, 2010, Ms. Incandela, a non-party to this lawsuit, stated that she was unaware of multiple litigation holds until she reviewed documents just before her deposition and admitted that she had, in fact, deleted things from her email in order not to overload the system.  At the hearing, she testified that some emails were deleted after the holds were issues because it was her practice to routinely clean her email box, but that she had preserved relevant emails.  DE[50], 101:10-102:23. She also testified that she had cross referenced her emails with those of the defendants, going through more than 1200 pages of documents, and found none relevant to this lawsuit. *Id.*, 105:12-106:1. The defendants argue that they had no duty to preserve the emails deleted by Ms. Incandela, who was not named as a defendant in the EEOC charge or this lawsuit, and that the plaintiff has received most, if not all, of the emails from the recipients and senders of the emails, who did not delete them.

5

Hingerton Aff., DE[38-10], ¶16.

The LaRosa emails: George LaRosa, who was listed in the litigation holds issued by outside and inside counsel, also deleted both sent and received emails for the periods 4/20/07 to 5/05/09. In his deposition testimony on January 19, 2010, he stated that he was aware of the litigation holds, and that, although he regularly deleted things, he first saved emails that related to litigation holds in his "legal" file. He also acknowledged surprise that an email relating to Siani appeared to have been deleted and did not know why. Pls. Ex 17. At the hearing, La Rosa testified that he had cross-referenced more than 1500 pages of emails from the defendants to find if any of his deleted emails were relevant, and found two possible items - one that dealt with La Rosa's availability for a conference call and dealing with an Article 78 proceeding on a different case. DE[50] 86:10-87:7. The defendants argue that the deleted email was actually produced to Siani by Rooney, and that they had no duty to preserve all of LaRosa's logs. Hingerton Aff., DE[38-10], ¶¶17-19.

The Keen emails: Siani alleges further gaps in the electronic email logs, specifically, defendant Keen's sent email log for 7/29/08 to 10/09/08. The defendants acknowledge that the sent email logs for the 2 1/2 month period "no longer exist," but that Siani was provided with copies of "certain" emails sent by Keen during this gap period, and that "neither the EEOC Charge, the Complaint nor the Amended Complaint contain any allegations of wrongdoing attributed to Keen during this period." Id., ¶20. At the hearing, Keen testified that some emails were deleted unintentionally and that a cross-referencing with other individuals' emails was done which allowed them to "reconstruct to some extent" the missing emails. That process yielded 80 or 90 email messages, none of which, he maintained were relevant to this lawsuit. DE[50], 21:2-

6

17; *see also* 26:7- 27:13.

The Blossom emails: Siani alleges a gap in defendant Blossom's sent email log for 12/04/08 to 3/02/09 and his received email log for 12/04/08 to 1/30/09.  The defendants state that the email logs referenced by Siani do exist, but were not produced because there were no relevant entries.  Nonetheless, they assert, numerous actual Blossom emails were produced because they mentioned Siani's name as part of a department-wide distribution list.  Further, they note, despite the fact that Siani was told, in response to his FOIL request in March 2008, that Blossom had been routinely deleting his emails, Blossom produced almost 500 documents in response to the FOIL application.  Id., ¶21.  Blossom testified at the hearing that his email logs do exist and haven't been produced because they contain no information relevant to this law suit, although they included some email with Siani's name in them, for example, when a meeting was being scheduled.  DE[50], 35:1- 36:5.

Further Alleged Failures in the Duty to Preserve

The plaintiff further alleges that the duty to preserve was breached by Rooney's failure to back up his own emails, as well as those of LaRosa, Incandela, and Marvin Fischer, Police Chief and FOIL Officer, and by Rooney's failure to suspend routine file destruction procedures.  Rooney states that in July 2008 he backed up the accounts of all of the defendants named in the EEOC charge other than himself, explaining that he did not back up his own account because, "as legal laison," he was "well aware [of the need] to preserve relevant emails, and therefore . . . was not concerned about the possibility of inadvertent deletion."  Rooney Aff., ¶¶6-7.  He did not back up the mailboxes of Incandela and Fischer, he states, because they were not referred to in the EEOC charge.  He did not back up LaRosa's mailbox because, although he was mentioned in

7

the EEOC Charge, there were no allegations of wrongdoing against him and he played no substantive role in the matters involving Siani. *Id*. at ¶7.

In his affidavit in opposition to the motion, Rooney did not address the allegation that he improperly failed to suspend routine file destruction procedures, but states that "the College undertook all appropriate steps to preserve relevant documents. . ." *Id.* at ¶10. At the hearing, he testified that he did not suspend the automatic 21 day deletion cycle. DE[50], 50:7-8.

Siani argues that the deletions and other failures to preserve amount to spoliation of evidence, and that he is entitled to an adverse inference, a claim to which I now turn.

## DISCUSSION

Generally, spoliation is "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *West v. Goodyear Tire & Rubber Co.,* 167 F.3d 776, 779 (2d Cir. 1999). If the evidence is relevant to a party's claim, its spoliation "can support an inference that the evidence would have been unfavorable to the party responsible for its destruction." *Zubulake v. UBS Warburg LLC ("Zubulake V),* 229 F.R.D. 422, 430 (S.D.N.Y. 2004) (quoting *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir.1998)). Here, Siani states that the discovery process was impeded by the defendants' "poorly coordinated effort in identifying, preserving, retrieving and producing discoverable electronic documents." Siani Aff., DE[38-2] ¶¶8-17.

"A party seeking an adverse inference instruction (or other sanctions) based on the spoliation of evidence must establish the following three elements: (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a 'culpable state of mind' and (3) that the destroyed evidence was

8

'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Zubulake V,* 229 F.R.D. at 430.  An adverse inference based on spoliation is considered to be an extreme sanction, which "should not be imposed lightly." *Scalera v. Electrograph Systems, Inc.,* 262 F.R.D. 162, 171 (E.D.N.Y. 2009). Determination of the appropriate remedy for spoliation is committed to the discretion of the trial judge.  *Fujitsu Ltd. v. Federal Express Corp.,* 247 F.3d 423, 436 (2d Cir. 2001).

<u>When did the duty to preserve arise and what was the scope of that duty?</u>

As to the first element, the duty to preserve evidence "arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." *Zubulake v. UBS Warburg LLC ("Zubulake IV"),* 220 F.R.D.212, 216 (S.D.N.Y. 2003) (quoting *Fujitsu Ltd v. Federal Express Corp.*, 247 F.3d 423, 436 (2d Cir. 2001)).  Once the duty to preserve arises, a litigant is expected, at the very least, to "suspend its routine document and retention/destruction policy and to put in place a litigation hold." *Zubulake IV,* 220 F.R.D. at 218*; see also Doe v. Norwalk Cmty Coll.,* 2007 U.S. Dist LEXIS 51084, at *14 (D. Conn. July 16, 2007)(a party needs to take affirmative acts to prevent its system from routinely destroying information).  Here, the defendants argue that the duty to preserve did not arise until they had notice of the EEOC Charge, and that they promptly issued backups and hold notices at that time.  The plaintiff argues that the holds should have started much sooner and that they were not properly overseen and enforced.

Siani claims, first, that the defendants "admit" that the duty to preserve arose in early 2008, when outside legal counsel was retained by the defendants for matters relating to Siani's allegations of ongoing discrimination and involving a FOIL request.  DE[38-8] at 3.  In support

9

of this claim Siani points out that in January 2010, the defendants argued that certain documents dated February 2008 were protected by the work product doctrine, having been prepared "in anticipation of litigation." See DE[27] at 3. The defendants argued that Siani had raised "concerns that he was a victim of ongoing age discrimination" at a meeting in January 2008, and that "[l]itigation was therefore reasonably foreseeable" as of that date. If it was reasonably foreseeable for work product purposes, Siani argues, it was reasonably foreseeable for duty to preserve purposes. The court agrees. The defendants argue that Siani "has cited no authority as would support a spoliation sanction being imposed based on a legal argument that was made by counsel regarding the attorney client work product." DE[38-13] at 5. The defendants, conversely, have cited no authority that would countermand the common sense conclusion that if the litigation was reasonably foreseeable for one purpose in January 2008, it was reasonably foreseeable for all purposes.

Even assuming that the duty did not arise in January, it was certainly triggered prior to the first efforts at preservation made by the defendants in July 2008. Siani's letter of March 13, 2008 to Kahn and Keen, informed the defendants "of a prima facie case of age discrimination, disparate treatment and retaliation [and the] . . . intent to investigate and pursue such claims," a letter acknowledged by Kahn on April 11, 2008. Indeed, at the hearing, Keen testified that he understood from a letter in early 2008 that Siani was threatening litigation or at least threatening to "elevate his claims." DE[50], 11:25 - 12:9. The defendants admit that a duty to preserve can arise prior to the filing of a complaint, "at the point in time when a defendant first anticipates litigation." DE[38-13] at 5 (quoting *Toussie v. County of Suffolk,* 2007 WL 4565160, *6 (E.D.N.Y. Dec. 21, 2007)). But, they argue, when, as here, the defendant is a municipal entity,

10

"a firm-wide duty to preserve 'is not imposed simply because one or two employees contemplate the possibility of litigation.'" *Id.* The relevant events here, however, did not simply involve "one or two" random employees "contemplating litigation." It involved Mr. Siani, with whom the key personnel had recent experience. That previous experience, coupled with Siani's letter of March 13, 2008 should have caused "key personnel" to anticipate a new round of litigation. *Id.* The defendants' argument that, around this time period Siani assured the President and the Provost that he wanted to avoid engaging in "another legal dispute" and hoped to resolve matters "without any further escalation," is not convincing. *See* Hingerton Aff., Ex. B. In a letter to President Keen dated March 25, 2008, Siani plainly stated that he was "fully prepared" to advance his claims "within the prescribed legal process." *Id*. Although Siani's commentary is somewhat ambiguous in terms of his likely intent to proceed with litigation, on the record before the court, I find that the defendants should reasonably have anticipated litigation at the latest as of the end of March 2008 and started a litigation hold as to those parties who would most likely be defendants in a lawsuit. Thus, whether the duty arose in January or late March of 2008, it arose well before the defendants initiated preservation efforts in July 2008.

Related to this aspect of the spoliation analysis is the question of the scope of the duty to preserve. Judge Scheindlin, in the fourth *Zubulake* decision, asked: "Must a corporation, upon recognizing the threat of litigation, preserve every shred of paper, every e-mail or electronic document, and every backup tape?" The answer, she noted, was "clearly no." *Zubulake v. UBS Warburg, LLC,* 220 F.R.D. 212, 217 (S.D.N.Y. 2003) ("*Zubulake IV*"). "Such a rule would cripple large corporations. . . . As a general rule, then, a party need not preserve all backup tapes even when it reasonably anticipates litigation." But, "while a party is under no duty to keep or

11

retain every document in its possession. . . it is under a duty to preserve what it knows, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery and/or is the subject of a pending discovery request." *Id.* (citing *Turner v. Hudson Transit Lines, Inc.,* 142 F.R.D. 68, 72 (S.D.N.Y. 1991)).  In a corporation, the duty extends to those employees likely to have relevant information - "the key players" in the case.

Here, Siani points to deletions by Incandela, LaRosa, Keen and Blossom, and failures by Rooney.  Siani has not identified any documents destroyed or made unavailable by Rooney, and such documents are the gravamen of a motion for an adverse inference ruling.  As to Blossom, he testified at the hearing that his email logs were available, although irrelevant and there is no basis for finding that any of his emails are missing.  I will thus look at the specific claims made in regard to Incandela, LaRosa and Keen to determine if a duty existed and documents were lost by a breach of that duty.

Incandela: Siani argues that Incandela, the non-party Director of Human Resources at the defendant college, was a key player who had an obligation to preserve all relevant documents as of early 2008, or, at the latest, as of July 2008.  Despite that duty, he continues, her email sent logs for the periods of 4/20/07 to 12/31/08 and received logs for the period 4/20/07- 1/21/09 are missing. The defendants argue that, starting in July 2008, when the EEOC Charge was received, there was no reason to think that they had to preserve Incandela's emails inasmuch as she was not named in the Charge or in the Complaint or Amended Complaint.  The earliest they would have been on notice regarding Incandela, they state, was May 4, 2009, when it received a document demand from Siani.  Nonetheless, emails concerning or even mentioning Siani to or

from the Director of Human Resources at the defendant employer can reasonably be seen as falling in the scope of documents to be preserved, and the logs and emails at least from August 2008, when the first litigation hold went out, with a copy to Incandela, fall within the preservation scope.  At her deposition, Incandela stated that she was aware of litigation holds in connection with this litigation, but that she became aware of them only when she reviewed documents in preparation for her deposition in January 2010, and did not recall their being issued earlier.  Siani Aff., DE[38-2], Ex.16, 113:4-20.  She acknowledged deleting emails and explained that she did it to avoid an overload in the system.  Id., 117:22-118:12.  At the hearing, she again testified that she had deleted emails, although none were relevant to Siani's lawsuit, as a cross referencing process demonstrated.  There is nothing in the record to suggest that Ms. Incandela acted in bad faith or with a willful purpose of destroying evidence, and the defendants state that despite the deletions, Siani received "copies of certain emails sent from or received by Incandela during the gap periods."  Hingerton Aff., DE[38-10], ¶16.  The fact remains, however, that the Incandela logs and emails from August 1, 2008 forward should not have been deleted.

LaRosa: Non-party George LaRosa was a Senior Vice President and Chief Financial Officer of the college.  His sent email logs from 4/20/07 to 5/5/09 and his received email logs from 4/20/07 to 5/5/09 were deleted.  LaRosa was named in the EEOC Charge and was listed in both the August 1 and August 13 litigation holds, and his duty to preserve arose at least by late July, 2008.  Siani argues that LaRosa testified that he "actually deleted discoverable emails related to plaintiff, his EEOC Charge and other matters related to this lawsuit."  DE[38-8] at 10.  At his deposition, LaRosa testified that he was aware of multiple litigation holds in connection with Siani's lawsuit, and understood that emails "relative to plaintiff" were part of the hold.

13

Siani Aff., DE[38-2], Ex. 17 at 73:19-75:2.  He further testified that he had preserved the emails relevant to Siani by storing them in an electronic "legal" folder and produced relevant emails to Kevin Rooney when directed to do so.  Id at 75:3-76:23.  He explained that he deleted sent logs routinely, after removing relevant entries to his legal file. Id. at 78:24-79:6.   When Siani pointed out to LaRosa a particular email log entry entitled "Siani EEOC Complaint" that was not produced, LaRosa said that he may have deleted it by mistake and was surprised by that.  *Id.* at 79:21-80:15.   At the hearing, he identified two specific emails that were deleted, but explained that they involved only availability for a meeting and an Article 78 proceeding in a different case. Like Incandela, there is no basis for finding that La Rosa acted with bad faith or a willful purpose, but emails were deleted that should have been preserved.

  Keen: The same is true of defendant Keen.  Although there is no basis at all for a finding of bad faith or intentional destruction of emails, and no reason to think that any relevant and potentially damaging emails were deleted, deletions occurred when preservation was required. Thus, the duty to preserve was breached.

Was There a Culpable State of Mind?

  A showing of breach of the duty to preserve is only the first step in the imposition of an adverse inference ruling.  A party seeking spoliation sanctions must also show that the relevant records "were destroyed with a culpable state of mind." *Toussie,* 2007 WL 4565160 at *7 (citing *Zubulake,* 229 F.R.D. at 430).  In the Second Circuit, this prong of the spoliation test can be "'satisfied by showing that evidence was knowingly . . . or negligently' destroyed." *Id.* (quoting *Residential Funding Corp. v. DeGeorge Fin. Corp.,* 306 F.3d 99, 108 (2d Cir. 2002)).  Here, Siani claims that the defendants were grossly negligent in delaying the litigation hold, and that

"the law is very clear that failure to implement a litigation hold at the outset of litigation amounts to gross negligence." DE[38-8] at 8; *Toussie,* 2007 WL 4565160 at *8 (citing *Heng Chan v. Triple 8 Palace,* 2005 WL 1925579 (S.D.N.Y. Aug. 11, 2005). The defendants here did not, however, fail to implement a litigation hold "at the outset of litigation." Indeed, they began the hold in July 2008, six months prior to the "outset of litigation." The fact that they delayed the hold for months past the time when they could reasonably have anticipated the litigation does not per se amount to gross negligence. If a delay of any length was tantamount to gross negligence and thus illustrative of a culpable state of mind, there would not be two separate elements for the plaintiff to prove. But there are two elements, and establishing a breach of the duty to preserve is separate from establishing a culpable state of mind.

Nonetheless, "once a litigation hold is implemented, counsel is then required to oversee compliance with the litigation hold and to monitor the party's efforts to retain and produce relevant documents," *Toussie,* 2007 WL 4565160 at *8 (citing *Zubulake,* 220 F.R.D. at 220). "Where the client is a business, its managers, in turn, are responsible for conveying to the employees the requirements for preserving evidence." *Heng Chan,* 2005 WL 1925579 at *6 (citing *Turner v. Hudson Transit Lines, Inc.,* 142 F.R.D. 68, 73 (S.D.N.Y. 1991)). Siani claims that these steps were not taken and that the defendants' "failure to effectively implement and enforce litigation holds related to key parties having involvement and knowledge of the matters related to this instant proceeding thereby result[ed] in spoliation of electronic records (primarily email communications)." DE[38-8] at 2.

The defendants did make efforts to institute and enforce a litigation hold, with Rooney implementing two backups, and he and in-house counsel issuing two or three litigation hold

15

directives. Further, Rooney and Hingerton both attest to their continuing reminders to the relevant parties to maintain the preservation of relevant documents. Still, some logs and documents were deleted, albeit in the context of routine clean-up procedures, and routine file destruction procedures were not suspended. Thus, there was negligence, if not gross negligence, in the implementation of the preservation efforts, and the culpable state of mind requirement is satisfied in this Circuit by a showing of ordinary negligence. *See Residential Funding*, 306 F.3d at 101; *see also Phoenix Four, Inc. v. Strategic Resources Corp.,* 2006 WL 1409413, *4 (S.D.N.Y. May 23, 2006). "Where only ordinary negligence is established . . . the party moving for an adverse inference instruction must prove relevance," and I turn now to that element. *Zubulake IV,* 220 F.R.D. at 220; *see also Phoenix Four,* 2006 WL 1409413 at*4.

Relevance of the Deleted Documents

To satisfy the third prong of the spoliation claim, Siani must establish that the missing emails were relevant evidence, and that the destroyed evidence would have been favorable to him. *Residential Funding*, 306 F.3d at 109; *see also Zubulake V,* 229 F.R.D. at 430. In this context, the term "relevance " means "something more than sufficiently probative to satisfy Rule 401 of the Federal Rules of Evidence." *Residential Funding*, 306 F.3d at 108-09. Courts should take care not to hold the movant to "too strict a standard of proof regarding the likely contents of the destroyed evidence." *Id.*

Relevance may be demonstrated in two ways. "First, it may be inferred if the spoliator is shown to have a sufficiently culpable state of mind." *Triple 8 Palace,* 2005 WL 1925579, at * 8. Siani argues here that the defendants were grossly negligent and acted in bad faith and that relevance is thus established. I have found, however, that there was no gross negligence, and the

16

record overall does not rise to "the egregious level seen in cases where relevance is determined as a matter of law." *Toussie*, 2007 Wl 4565160.  "[O]nly in the case of *willful* spoliation is the spoliator's mental culpability itself evidence of the relevance of the documents destroyed." Here, I find that, based on the defendants' submissions in opposition to the motion and on the testimony at the hearing, that there was no willful spoliation, although the preservation efforts on the part of the defendants were not exemplary.

The second way to establish relevance is for the moving party to submit "extrinsic evidence tending to demonstrate that the missing evidence would have been favorable to it." *Triple 8 Palace,* 2005 WL 1925579, at * 8 (citation omitted).  In order to obtain an adverse inference, the destroyed evidence must "have been of the nature alleged by the party affected by the destruction." *Id*.  In other words, Siani must present extrinsic evidence tending to show that the destroyed e-mails would have been favorable to his case, and where "'there is no extrinsic evidence whatever tending to show that the destroyed evidence would have been unfavorable to the spoliator, no adverse inference is appropriate.'" *Zubulake IV,* 220 F.R.D. at 221 (quoting *Turner v. Hudson Transit Lines, Inc.,* 142 F.R.D. 68, 77 (S.D.N.Y. 1991).

Siani has produced no extrinsic evidence to meet this burden, instead relying exclusively on his argument that the defendants acted in bad faith.  The parties agree that many of the emails on the missing logs were actually produced to Siani by the other parties.  He might have come forward with samples of those emails showing that they were relevant and favorable to him and thus suggestive that any missing emails were also likely to be relevant and favorable.  He has not done so.  Indeed, he has not pointed to any emails as rising to the level of relevance and favorability that must be shown. Because there has been no showing of relevance, the motion for

an adverse inference ruling must be denied.

Dated:  Central Islip, New York           **SO ORDERED:**
        August 10, 2010

                                           /s/ William D. Wall
                                          WILLIAM D. WALL
                                          United States Magistrate Judge