# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

———————————

Nº 2:09-cv-0407 (JFB)(WDW)

———————————

## DOMINICK J. SIANI,

Plaintiff,

VERSUS

## STATE UNIVERSITY OF NEW YORK AT FARMINGDALE, ET AL.,

Defendants.

———————————

### MEMORANDUM AND ORDER
March 28, 2014

———————————

JOSEPH F. BIANCO, District Judge:

*Pro se* plaintiff Dominick J. Siani (hereinafter "plaintiff") brought this action against his employer, the State University of New York (SUNY) and the State University of New York at Farmingdale (SUNY(F)), as well as W. Hubert Keen, Lucia Cepriano, Stephen Havlovic, Marti Anne Ellerman, Seth Gilbertson, Lorraine Greenwald, Francine Federman, Richard Vogel, Matilda Fava, Anthony Giffone, Judith Levine, Daniel Marrone, William Steedle, Socrates Thanasas, and Kathleen Walsh (collectively "defendants"), alleging violations of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et. seq.*, the Fourteenth Amendment, and various claims under New York state law. This action has been consolidated under the same docket number as an earlier age-discrimination case, begun in 2009, that involves some of the same defendants. The Court has already decided a summary judgment motion in that case, and

denied summary judgment with respect to certain claims.

Pending before the Court are five motions: defendants' motion for partial summary judgment, and plaintiff's motions requesting that the Court impose sanctions for spoliation and attorney misconduct, compel production of documents withheld under the attorney-client privilege, and strike portions of an affidavit. Plaintiff's four motions are discussed in more detail in section III, *infra*, but in short they are denied because plaintiff did not meet his burden under the applicable legal standards.

Defendants' summary judgment motion is denied in part and granted in part. Plaintiff's core claim is that, when he was considered for reappointment as a professor, SUNY(F) and its officials denied his reappointment and terminated him immediately in retaliation for his earlier age-discrimination litigation against SUNY(F)

and some of those same officials. After dismissing several of plaintiff's claims as a matter of law, the Court applies the burden-shifting analysis established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) to plaintiff's remaining causes of action under the ADEA, 42 U.S.C. § 1983, and the New York Human Rights Law (NYHRL), and concludes that, if all of plaintiff's evidence is credited and all reasonable inferences are drawn in his favor, a reasonable jury could find that plaintiff was not reappointed and instead terminated because of his earlier age-discrimination lawsuits. Therefore, the Court denies summary judgment as to Keen in his official capacity on the retaliation claim under the ADEA and § 1983, which can only proceed with respect to injunctive relief. Similarly, the Court concludes, with respect to the retaliation claims under the NYHRL against the individual defendants, that there is sufficient evidence to survive summary judgment as to certain defendants. Therefore, the Court denies defendants' summary judgment motion as to the retaliation claim under the NYHRL with respect to defendants Keen, Cepriano, and Vogel only, because those are the only defendants whom a rational jury could find had a retaliatory motive, when viewing the evidence in a light most favorable to plaintiff, and whose participation in the employment decision made retaliation the "but for" cause of plaintiff not being reappointed and, instead, being terminated. Plaintiff's evidence concerning the remaining individual defendants could not, even if credited, convince a reasonable jury that plaintiff suffered any adverse action as a result of any discrimination or retaliation by them.

The Court also grants summary judgment with respect to plaintiff's state-law causes of action for defamation and breach of contract. In short, the statement at issue in the defamation cause of action is a statement of opinion, not fact, and it is also privileged. The breach of contract claim alleges that defendants did not conduct plaintiff's reappointment in accordance with a Stipulation of Settlement executed during the prior litigation, but the only party to that contract in his individual capacity was Keen, and a reasonable jury could not conclude that he breached the provisions of the Stipulation cited by plaintiff.

## I. Background

Plaintiff has been involved in age-discrimination litigation against SUNY(F) since 2005. For background purposes, some of the litigation is described below, followed by a discussion of the facts pertinent to the present motion.

### A. Procedural History

Plaintiff was an adjunct professor at SUNY(F) who, in 2005, sued the school for age discrimination he allegedly encountered when he sought to become a full-time professor. In 2007, he settled that lawsuit and, pursuant to a Stipulation of Settlement ("Stipulation"), was made a full-time, tenure-track Assistant Professor. (Stipulation ¶ 3.) The Stipulation provided that plaintiff would be appointed to a three-year term from 2007 to 2010, followed by a two-year term in the same position from 2010 to 2012. (*Id.*)

On January 30, 2009, plaintiff filed another lawsuit against SUNY(F) and various individuals, alleging age discrimination related to his attempt to become chairman of the Business Management Department. On June 7, 2011, defendants moved for summary judgment. The Court denied summary judgment on most claims on December 15, 2011.

On August 26, 2011, while the summary judgment motion was pending, plaintiff was fired from his position as Assistant Professor, after a reappointment process that is described in more detail below. On February 6, 2012, plaintiff filed a new complaint under a different docket number, alleging that his termination was in retaliation for his lawsuit and motivated by age discrimination. That complaint has since been amended ("the supplemental complaint") and the case was consolidated under the current docket number with the case begun in 2009.

The supplemental complaint contains seven causes of action alleging age discrimination and retaliation by SUNY, SUNY(F), and the fifteen individual defendants named in the first paragraph of this Memorandum and Order. Of the individuals, five were also named in the 2009 lawsuit related to the department chairmanship, while ten were new to this litigation. All fifteen individual defendants allegedly played some role in plaintiff's termination.

On June 3, 2013, defendants filed the present motion for partial summary judgment with respect to the supplemental complaint. The Court's decision on the previous motion for summary judgment, issued on the record on December 15, 2011, remains intact.[1]

B. Factual Background

As noted, plaintiff became a full-time faculty member at SUNY(F) in 2007 under the terms of the Stipulation, which also addressed SUNY(F)'s future hiring decisions with respect to plaintiff. One provision—now the basis for plaintiff's breach of contract claim—required that any future hiring decision be conducted in accordance with SUNY and SUNY(F) policies and by-laws, and with the collective bargaining agreement that applied to plaintiff. (Stipulation ¶ 3(f).) Another provision, however, created an exception to the normal reappointment process, and required that if plaintiff was ever considered for reappointment, Keen (the President of SUNY(F)) would designate another person to recommend whether plaintiff should be reappointed, and Keen would accept that recommendation. (Id. ¶ 3(i).) Normally, Keen makes the ultimate determination whether faculty should continue to be employed (Def. 56.1 ¶ 191), although his decision follows a series of evaluations and recommendations by a committee within the candidate's department, a committee at the college level, and various administrators, including the applicable department chair, dean, and provost (Def. 56.1 ¶ 8; Pl. 56.1 ¶¶ 204-05).

In February 2011, plaintiff submitted a portfolio to the acting chair of his department (Business Management), seeking to be reappointed after the expiration of the terms established in the Stipulation. (Def. 56.1 ¶ 7.) From there, the evaluation of plaintiff's portfolio followed the normal process of sub-presidential evaluations and recommendations. First, plaintiff was

---

[1] The prior ruling did not clearly address whether the state entities were protected by sovereign immunity in this case. For the same reasons discussed in section II.B.i, *infra*, summary judgment is granted with respect to all claims in this action against SUNY and SUNY(F), and against any defendants other than Keen in their official capacity, including those claims addressed as part of the earlier summary judgment motion. Otherwise, this Memorandum and Opinion

does not change the Court's ruling on the first motion for summary judgment.

reviewed in his own department, where he was recommended for reappointment by both the departmental committee and the department chair, Dr. Francine Federman. (*Id.* ¶¶ 12-13.) Although Federman recommended plaintiff's reappointment, she is a named defendant because of reservations she expressed and material she included in plaintiff's portfolio. In particular, plaintiff argues that the inclusion of her observation report (concerning plaintiff's teaching) is a substantive due process violation. As is discussed more fully below, plaintiff contends that such reports are normally three pages long, but Federman added 38 pages of course material to her two-page report, making the report "unduly burdensome" in plaintiff's reappointment portfolio. (Pl. 56.1 ¶ 421.)

Next, plaintiff's portfolio went to the College Academic Faculty and Continuing and Term Appointment Committee ("CCTA"), which also issues a non-binding recommendation. (Def. 56.1 ¶ 20.) In past years, the CCTA did not make recommendations concerning candidates like plaintiff, who were seeking reappointment as opposed to tenure. (*Id.* ¶ 31.) At the beginning of the 2010-11 academic year, however, the CCTA decided that it would vote on reappointment portfolios as well. (*Id.* ¶ 30.) The parties dispute whether this change was within the CCTA's authority. Plaintiff argues that specific faculty by-laws establish the responsibilities of the CCTA (Pl. 56.1 ¶ 32(c)), while defendants contend that CCTA procedures are not clearly defined and may permissibly vary from year to year (Def. 56.1 ¶ 32).

The CCTA procedures are relevant to several of plaintiff's causes of action, in part because the CCTA was the first step in the evaluation process where plaintiff was not recommended for reappointment. The CCTA informed him by letter on April 7, 2011, that it voted not to recommend him (*id.* ¶ 33), and all seven members of the CCTA are now named defendants. Most prominent among them in plaintiff's submissions on these motions is the CCTA's chairman, Dr. Richard Vogel, who took charge in the 2010-11 academic year when the committee decided to vote on reappointment portfolios. (*Id.* ¶¶ 27-31.) During 2010-11, when plaintiff was being considered for another position outside of the CCTA, Vogel was heard to ask rhetorically whether "we want someone who is FOILing everybody," an apparent reference to plaintiff's freedom-of-information requests. (Reganse Dep. at 47.)

On April 7, 2011, the CCTA notified plaintiff by letter that it had voted not to recommend him for reappointment.[2] (Ex. 2-7 to Greenwald Dep. at 348.) On a form attached to the letter, handwritten comments by four of the seven CCTA members indicated that plaintiff was lacking in peer-reviewed scholarship, progress toward his doctoral degree, and service to the school beyond his department. (*Id.* at 349.)

Plaintiff's next evaluator was the Dean of the School of Business, Dr. Lorraine Greenwald. (Def. 56.1 ¶ 100.) On April 26, 2011, Greenwald recommended against reappointment, and did not explain the reason for her recommendation. (Ex. 2-7 to Greenwald Dep. at 355.) Two months

---

[2] The CCTA met to reconsider plaintiff's portfolio on June 7, 2011, and again voted not to recommend reappointment. (Def. 56.1 ¶ 72.) The reconsideration meeting occurred because of a dispute concerning whether plaintiff received an adequate opportunity to respond to certain negative comments in his portfolio. Before the June 7 meeting, plaintiff submitted a response for the CCTA's consideration. (*Id.* ¶ 74.)

earlier, she had observed plaintiff's teaching, and issued a memo for his file that contained favorable comments but also criticized him for publishing his "Instructor's Manual" online for students to view. (Ex. 2-D to Pl. Dep.) Greenwald's criticisms of the online publication appear to have been pedagogical in nature, but in the same paragraph she wrote that "it may be copyright infringement." (*Id.*) That comment is now the basis for plaintiff's defamation claim.

After Greenwald, the next person to evaluate plaintiff's portfolio was Dr. Lucia Cepriano, the Provost and Vice President for Academic Affairs. (Def. 56.1 ¶ 101.) By letter dated July 27, 2011, Cepriano informed plaintiff that she was not recommending him for reappointment. (Ex. 2-7 to Greenwald Dep. at 356-57.) She wrote that her decision was based on his lack of peer-reviewed scholarship and service beyond his department. (*Id.*)

At the same time that Cepriano conducted her review, SUNY(F) engaged the independent reviewer required by the Stipulation. Dr. Steven Havlovic, the Vice President for Academic Affairs at Alfred State College, had been identified by SUNY officials as someone outside of SUNY(F) who could objectively evaluate plaintiff and issue a recommendation to Keen. (Def. 56.1 ¶¶ 102-03, 107-08.) He appears to have received all of the previous recommendations, but he was instructed not to consult anyone at SUNY(F) directly. (*Id.* ¶¶ 108, 113.) Havlovic ultimately decided not to recommend plaintiff for reappointment, primarily because of his deficient scholarship. (Havlovic Dep. at 164-68.)

Havlovic issued his written recommendation not to reappoint plaintiff in the form of a letter dated August 26, 2011,

addressed to Seth Gilbertson, who was campus counsel at SUNY(F). (Ex. 2-9 to Havlovic Dep.) Gilbertson was SUNY(F)'s liaison to Havlovic during the reappointment process, and the person who instructed him not to consult with others at SUNY(F). (Def. 56.1 ¶¶ 109-10.) Plaintiff alleges that Gilbertson unduly influenced Havlovic's decision and added derogatory material to his final recommendation. (Pl. 56.1 ¶ 111.) Gilbertson's supervisor, a SUNY attorney named Marti Ann Ellerman, is also a defendant in the supplemental complaint.

On the same day that Havlovic recommended against reappointing plaintiff, Gilbertson informed Keen of Havlovic's negative recommendation, and Keen notified plaintiff by letter that he would not be reappointed and was terminated effective immediately. (Def. 56.1 ¶¶ 134-35.) The immediate termination was governed by a buy-out clause in the collective bargaining agreement that applied to plaintiff, which required SUNY(F) to pay plaintiff his salary for the remainder of his term appointment, until August 2012. (*Id.* at 135.) It is undisputed that the Stipulation did not address the buy-out clause or prevent SUNY(F) from relying on it. (*Id.* at 136.)

Below, the Court considers defendants' motion for partial summary judgment before proceeding to plaintiff's four motions.

## II. SUMMARY JUDGMENT

### A. Standard of Review

The standards for summary judgment are well settled. Pursuant to Federal Rule of Civil Procedure 56(a), a court may only grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving

party bears the burden of showing that he or she is entitled to summary judgment. *Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (quoting *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996)); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial.*" *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (emphasis in original) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). As the Supreme Court stated in *Anderson*, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment

may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. *Id.* at 247-48 (emphasis in original). Thus, the nonmoving party may not rest upon mere conclusory allegations or denials but must set forth "'concrete particulars'" showing that a trial is needed. *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (quoting *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978)). Accordingly, it is insufficient for a party opposing summary judgment "merely to assert a conclusion without supplying supporting arguments or facts." *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (quoting *Research Automation Corp.*, 585 F.2d at 33).

The Second Circuit has provided additional guidance regarding summary judgment motions in discrimination cases:

We have sometimes noted that an extra measure of caution is merited in affirming summary judgment in a discrimination action because direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence found in affidavits and depositions. *See, e.g., Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994). Nonetheless, "summary judgment remains available for the dismissal of discrimination claims in cases lacking genuine issues of material fact." *McLee v. Chrysler Corp.*, 109 F.3d 130, 135 (2d Cir. 1997); *see also Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d

Cir. 2001) ("It is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases.").

*Schiano v. Quality Payroll Sys.*, 445 F.3d 597, 603 (2d Cir. 2006) (quoting *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 69 (2d Cir. 2001)).

### B. Preliminary Questions of Law

The Amended Complaint lists seven causes of action against a total of seventeen defendants. Each cause of action refers to all defendants, except the cause of action for defamation,[3] which plaintiff brings against Keen and Greenwald only. (Pl. Mem. At 88.) In response, defendants have moved under both Rules 12(b)(6) and 56 of the Federal Rules of Civil Procedure, and it is worthwhile at the outset to apply the standard of Rule 12(b)(6) to the six causes of action naming all defendants, before engaging in more fact-intensive summary judgment review below. *Accord Schwartz v. Compagnie Gen. Transatlantique*, 405 F.2d 270, 273-74 (2d Cir. 1968) ("Where appropriate, a trial judge may dismiss for failure to state a cause of action upon motion for summary judgment.").

### i. State Entities

SUNY and SUNY(F) are the first named defendants, and all claims against them must be dismissed because they are granted immunity by the Eleventh Amendment. "The Eleventh Amendment prohibits the 'Judicial power of the United States' from

---

[3] Plaintiff acknowledged in his brief that there are no claims in the Amended Complaint against defendant Marrone, only supplemental factual allegations that relate to his earlier lawsuit. (Pl. Mem. at 42.) As such, the Court construes the Amended Complaint to state no claims against Marrone.

extending to 'any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.'" *In re Deposit Ins. Agency*, 482 F.3d 612, 617 (2d Cir. 2007) (quoting U.S. Const. Amend. XI). The Eleventh Amendment also applies to suits brought against a state by its own citizens. *CSX Transp., Inc. v. N.Y. State Office of Real Prop. Servs.*, 306 F.3d 87, 94 (2d Cir. 2002) (citing *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974)).

However, "Eleventh Amendment immunity is not absolute." *Id.* at 95. A state may waive or Congress may abrogate sovereign immunity, *id.*, but neither has occurred here. Counsel for defendants have brought the present motion partially on Eleventh Amendment grounds, and neither of the applicable federal statutes abrogate it. *See McGinty v. New York*, 251 F.3d 84, 92 (2d Cir. 2001) (ADEA) (citing *Kimel v. Fl. Bd. of Regents*, 528 U.S. 62, 92 (2000)); *Dube v. State Univ. of N.Y.*, 900 F.2d 587, 594 (2d Cir. 1990) (§ 1983) (citing *Quern v. Jordan*, 440 U.S. 332, 340-42 (1979)). With respect to the state-law claims, the Eleventh Amendment bars all suits against states in federal court based on state law, regardless of the relief sought. *Shibeshi v. City Univ. of N.Y.*, 531 Fed.Appx. 135, 135-36 (2d Cir. Aug. 29, 2013) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984)).

Plaintiff argues that the state entities must nevertheless remain parties to this lawsuit because only they can pay the litigation costs he will accrue in pursuit of his claims for prospective relief against various SUNY personnel in their official capacities. These claims are cognizable, plaintiff asserts, under the *Ex parte Young* exception to sovereign immunity, which allows for suits against state officers in their

official capacities if the "'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *In re Dairy Mart Convenience Stores, Inc.*, 411 F.3d 367, 372 (2d Cir. 2005) (quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)).

There are two flaws in this argument. First, even if plaintiff has stated a claim against a state officer that fits the *Ex parte Young* exception, he is incorrect that, if he is successful in pursuing that claim, he may only recover litigation expenses if the state entities are parties to the lawsuit. The fact that the state officers remain parties to the suit in their official capacities means that the "suit is, in all respects other than name, to be treated as a suit against the [state] entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (discussing an award of attorney's fees). "Thus, while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself." *Id.*; *see also Brandon v. Holt*, 469 U.S. 464, 472 (1985) ("In at least three recent cases arising under § 1983, we have plainly implied that a judgment against a public servant 'in his official capacity' imposes liability on the entity that he represents provided, of course, the public entity received notice and an opportunity to respond. We now make that point explicit."); *Thompson v. Pallito*, -- F. Supp. 2d --, No. 1:12-CV-225, 2013 WL 2393109, at *8 (D. Vt. May 29, 2013) ("[A]n official-capacity suit results in a damages judgment against the state itself."); *Ellis v. Univ. of Kansas Med. Ctr.*, 163 F.3d 1186, 1196 (10th Cir. 1998) (dismissing state entities

upon review of attorneys' fees award).[4] All claims against SUNY and SUNY(F) are therefore dismissed.

Plaintiff's second Eleventh-Amendment problem is that he has cast his claims too broadly for *Ex parte Young*. That exception to sovereign immunity only authorizes suit against officials with the authority to provide the requested relief. *Schallop v. N.Y. State Dep't of Law*, 20 F. Supp. 2d 384, 391 (N.D.N.Y. 1998); *see also CSX Transp., Inc. v. N.Y. State Office of Real Prop. Servs.*, 306 F.3d 87, 98-99 (2d Cir. 2002) (considering individual defendants' legal power and duty to control assessment of taxes alleged to violate federal law). Here, only Keen has the authority to reinstate plaintiff and provide the other injunctive relief he seeks.[5]   (Def. 56.1 ¶ 199.)

---

[4] Plaintiff's argument that the state entities should remain parties to this suit is based primarily on the Supreme Court's decision in *Hutto v. Finney*, but that case addressed whether the Eleventh Amendment barred attorney's fees as a form of relief against a state when the state was otherwise a proper party to the suit. 437 U.S. 678, 696-97 (1978). Plaintiff has identified no authority suggesting that *Hutto* can be used offensively to draw a party into litigation based on its ability to pay fees, and it would appear that the opposite is true, since responsibility for fees depends on liability on the merits. *Graham*, 473 U.S. at 165. Where a party is immune, a judgment for fees cannot run against that party. *Id.* at 164 (citing *Supreme Court of Virginia v. Consumers Union of United States, Inc.*, 446 U.S. 719, 737 (1980)).

[5] Plaintiff argues that his requested relief reaches the other individual defendants because he seeks an injunction requiring them to undergo training, and restraining them from future violations of the law. The former (assuming the Court had the authority and inclination to grant it) could be addressed by enjoining Keen alone; the latter is too non-specific to constitute proper relief. *Peregrine Myanmar Ltd. v. Segal*, 89 F.3d 41, 51 (2d Cir. 1996) ("[A]n injunction must be more specific than a simple command that the defendant obey the law.").

Therefore, the official-capacity claims against any of the individual defendants besides Keen are dismissed.[6]

### ii. ADEA Claims

The supplemental complaint also contains a cause of action against all defendants under the ADEA, but the ADEA does not subject individuals to liability. *Leykis v. NYP Holdings, Inc.*, 899 F. Supp. 986, 990-91 (E.D.N.Y. 1995) (describing lack of support for individual liability in statutory text); *see also Sareen v. Port Authority of N.Y. & N.J.*, No. 12 Civ. 2823(PAE), 2013 WL 6588435, *11 n.7 (S.D.N.Y. Dec. 16, 2013). The ADEA prohibits discrimination by an "employer," 29 U.S.C. § 623(a), who is represented in this case by Keen in his official capacity. Therefore, any ADEA claims against defendants in their individual capacities are dismissed.

### iii. § 1983 claims

The supplemental complaint also contains causes of action under 42 U.S.C. § 1983, alleging violations of plaintiff's constitutional rights to Equal Protection and Due Process. As already discussed, any official-capacity claim against the defendants other than Keen is dismissed on the basis of Eleventh Amendment immunity.

Defendants are also immune from most of the individual-capacity claims under the doctrine of qualified immunity. "Qualified immunity provides government officials immunity from suit rather than a mere defense to liability." *Looney v. Black*, 702 F.3d 701, 705 (2d Cir. 2012) (internal citations and quotation marks omitted). When considering a claim of qualified immunity, courts ask first whether there was a violation of a clearly established constitutional right. *Id.* at 706. "A right is clearly established if the law (1) was 'defined with reasonable clarity,' (2) has been affirmed by 'the Supreme Court or the Second Circuit[,]' and (3) where the conduct at issue would have been understood by a reasonable defendant to be unlawful under the existing law." *Id.* (quoting *Young v. Cnty. of Fulton*, 160 F.3d 899, 903 (2d Cir. 1998)); *see also Ashcroft v. al-Kidd*, 563 U.S. --, 131 S.Ct. 2074, 2083 (2d Cir. 2011) ("We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate."); *accord Hunter v. Bryant*, 502 U.S. 224, 227 (1991) ("[W]e repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation.").

Here, the § 1983 causes of action appear to refer to four distinct constitutional rights, the first of which is clearly established. First is a right to be free from disparate treatment in employment on the basis of age, which is clearly established in this Circuit.[7]

---

[6] Defendants argue that the *Ex parte Young* exception does not apply to this case at all because plaintiff's termination was final, and thus not an "ongoing" violation. That argument is flatly inconsistent with the Second Circuit's observation that: "Every Circuit to have considered the issue, including our own, has held that claims for reinstatement to previous employment satisfy the *Ex parte Young* exception to the Eleventh Amendment's sovereign immunity bar." *State Emps. Bargaining Agent Coalition v. Rowland*, 494 F.3d 71, 96 (2d Cir. 2007).

[7] The question whether the ADEA preempts an age discrimination claim under § 1983 is the subject of a circuit split, and the Second Circuit has not yet ruled on the issue. *Reed v. Garden City Union Free Sch. Dist.*, No. CV 12–4195, -- F. Supp. 2d --, 2013 WL 6645007, at *3 (E.D.N.Y. Dec. 16, 2013); *see also Butts v. NYC Dep't of Hous. Pres. and Dev.*, 307 F. App'x 596, 598, n. 1 (2d Cir. 2009) (declining to

Plaintiff also appears to assert a right under the Equal Protection Clause to be free from retaliation for engaging in age discrimination litigation. Neither the Supreme Court nor the Second Circuit has held specifically that retaliation for age discrimination litigation may be the subject of an equal protection claim. More broadly, courts including the Second Circuit have questioned whether retaliation for discrimination complaints is cognizable as an equal protection violation, as opposed to a First Amendment theory. *See, e.g.*, *Bernheim v. Litt*, 79 F.3d 318, 323 (2d Cir. 1996) ("Although claims of retaliation are commonly brought under the First Amendment . . . and may also be brought under Title VII . . . we know of no court that has recognized a claim under the equal protection clause for retaliation following complaints of racial discrimination.").

The Second Circuit declined to "break new constitutional ground" in *Bernheim*, 79 F.3d at 323, but more recently, it allowed a § 1983 retaliation claim to proceed on an equal protection theory. *Hicks v. Baines*, 593 F.3d 159, 171 (2d Cir. 2010). *Hicks* did not cite to or discuss *Bernheim*, and district courts within the Circuit have since noted that the viability of a § 1983 retaliation

claim based on an equal protection theory remains unclear. *See Melendez v. City of New Haven*, No. 3:13-cv-860(RNC), 2013 WL 6859941, at *2 (D. Conn. Dec. 30, 2013); *Grant v. N.Y. State Office for People with Developmental Disabilities*, 12-CV-4729, 2013 WL 3973168, at *10 n. 8 (E.D.N.Y. July 30, 2013). Thus, the right to be free from retaliation under the Equal Protection Clause is not clearly established, barring (under the doctrine of qualified immunity) the individual-capacity § 1983 retaliation claims.

The official-capacity § 1983 retaliation claim against Keen, however, is not covered by official immunity. *See Allen v. Coughlin*, 64 F.3d 77, 81 (2d Cir. 1995). Thus, despite lower courts' disagreement on this issue, following *Hicks*, the Court concludes that plaintiff's retaliation claim is cognizable under an equal protection theory. *See Hicks*, 593 F.3d at 171 ("The premise of this lawsuit is that plaintiffs were treated differently—that is, they suffered retaliation—on the basis of their participation in discrimination investigations and proceedings. That participation obviously constitutes an 'impermissible' reason to treat an employee differently.").

The third and fourth rights alleged in the § 1983 causes of action are cast as Due Process violations. The Court's consideration of these claims is more fact-dependent, and thus better characterized as a decision on defendants' motion for summary judgment. Plaintiff contends that Federman and Greenwald committed substantive due process violations when they added derogatory material to his reappointment portfolio. However, "not all wrongs perpetrated by a government actor violate due process. The protections of substantive due process are available only against egregious conduct which goes beyond merely offend[ing] some fastidious

---

address preemption). Nonetheless, courts in this circuit have held that plaintiffs may pursue both claims. *See Weinstein v. Garden City Union Free Sch. Dist.*, No. CV 11–2509(AKT), 2013 WL 5507153, at *20 n.3 (E.D.N.Y. Sept. 20, 2013) (collecting cases). Assuming *arguendo* that an age discrimination claim can be pursued under § 1983 based on a disparate-treatment theory, the Court grants summary judgment on this claim for the same reasons it grants summary judgment on the disparate treatment claim under the ADEA – namely, plaintiff has failed to put forth sufficient evidence (even if credited) from which a rational jury could conclude that the denial of his reappointment and termination was because of his age.

squeamishness or private sentimentalism and can fairly be viewed as so brutal and offensive to human dignity as to shock the conscience." *Smith v. Half Hollow Hills Cent. Sch. Dist.*, 298 F.3d 168, 173 (2d Cir. 2002). A reasonable jury could not conclude that this standard is met by the conduct of Greenwald and Federman.

Defendants are also immune from plaintiff's separate procedural due process claim based on the alleged violations of the faculty by-laws. As is discussed in more detail below, plaintiff has simply not shown that the CCTA's decision to vote on reappointment portfolios was a violation of the by-laws. The language of those by-laws is ambiguous, but suggests that the CCTA did have the authority to change its procedures. Plaintiff has argued separately that the by-laws were applied differently to him (he did not receive feedback from the CCTA, like other candidates), but he has identified no legal authority suggesting that the failure to provide one or two sentences of feedback (which is all that the other candidates received) amounts to an Equal Protection violation. Therefore, the alleged violations of the by-laws do not implicate a clearly established right, and the procedural due process claims are dismissed on the basis of qualified immunity.

iv.     NYHRL

Any official-capacity claim under the NYHRL is dismissed against all defendants, including Keen, because the *Ex parte Young* exception does not apply to claims under state law. *See Chinn v. City Univ. of N.Y. Sch. of Law at Queens Coll.*, 963 F. Supp. 218, 227 (E.D.N.Y. 1997) ("Whereas a federal court may award injunctive relief against a state official in an official-capacity action based on the *Ex Parte Young* 'exception,' the Eleventh Amendment bars even prospective injunctive relief based on

violations of state law." (citing *Pennhurst*, 465 U.S. at 106)).

Plaintiff presents four varieties of individual-capacity claims under the NYHRL: he alleges that defendants violated the NYHRL both through disparate treatment and retaliation, and that they did so directly, in violation of NYHRL § 296(1), and by aiding and abetting in violation of NYHRL § 296(6). "[A]n individual defendant may be held liable under the NYHRL for actual participation in or aiding and abetting an employer's retaliatory conduct," and thus the Court will consider the individual-capacity NYHRL claims against all defendants below.[8] *King v. Town of Wallkill*, 302 F. Supp. 2d 279, 297 (S.D.N.Y. 2004).

v.     Other state-law claims

The supplemental complaint also contains causes of action for defamation and breach of contract under state law. Plaintiff has clarified that the defamation claim applies only to Keen and Greenwald (Pl. Mem. at 88), and as previously noted, that claim must be an individual-capacity claim because the Eleventh Amendment bars official-capacity claims brought under state law. The individual-capacity claim against Keen must be dismissed because it is not

_____

[8] The Court notes that the individual-capacity claims under the NYHRL generally entail an analysis of whether the defendant had "sufficient authority and power." *Anyan v. N.Y. Life Ins. Co.*, 192 F. Supp. 2d 228, 239 n.3 (S.D.N.Y. 2002). In an abundance of caution, however, the Court will assume that each individual defendant had such authority, and that even if they did not, they could have been an aider-or-abettor under the NYHRL. *See Feingold v. New York*, 366 F.3d 138, 157-58 (2d Cir. 2004) (noting that co-workers without authority over plaintiff may be subject to liability for aiding and abetting).

premised on a defamatory statement or act, but rather Keen's failure to investigate. Plaintiff relies on *Treppel v. Biovail Corp.*, 03-CV-3002(PKL), 2005 WL 2086339, at *3 (S.D.N.Y. Aug. 30, 2005), for the proposition that New York law allows a claim for defamation against "all who take part in the procurement, composition, and publication" of the defamatory statement, but neither the allegations in the supplemental complaint, nor any evidence adduced by plaintiff meets even the broad terms of that rule. Keen did not procure, compose, or publish Greenwald's "copyright" comment—he appears to have simply ignored it. *See id.* ("[A] defamation claim cannot survive without an allegation that defendants participated in the creation or the publication of the statements at issue.") (collecting cases); *accord Dongguk Univ. v. Yale Univ.*, 873 F. Supp. 2d 460, 470 (D. Conn. 2012) ("A failure to investigate the truth of a communication cannot be a cognizable cause of action because it is the communication itself that causes injury to a plaintiff.").

Likewise, the breach of contract claim may only proceed as an individual-capacity claim, and the only party who signed the Stipulation in his individual capacity was Keen. (Pl. 56.1 Ex. 2 at 156.); *see Globaltex Grp., Ltd. v. Trends Sportswear, Ltd.*, No. 09-CV-235 (JBW), 2009 WL 1270002, at *4 (E.D.N.Y. May 6, 2009) ("An action for breach of contract requires that a contractual agreement exist between the plaintiff and defendant."). Thus, any breach of contract claim against any other defendant is dismissed.

### vi.     Summary of claims

Having concluded that many of the claims fail to state a cause of action as a matter of law (for reasons discussed *supra*), the Court will analyze the following remaining claims under the summary judgment standard: (1) a disparate treatment claim for injunctive relief based upon age under the ADEA and Section 1983, against Keen in his official capacity, and against all individual defendants in their individual capacities under Section 1983 and the NYHRL; (2) a retaliation claim for injunctive relief under the ADEA and § 1983 against Keen in his official capacity, and a retaliation claim under the NYHRL against all individual defendants in their individual capacities; (3) a breach of contract claim against Keen in his individual capacity; and (4) a defamation claim against Greenwald in her individual capacity.[9]

### C.  *McDonnell-Douglas*

Having determined which causes of action state claims against which defendants, it is appropriate to proceed directly to an analysis of the evidence under the *McDonnell Douglas* burden-shifting framework, which applies equally to the ADEA official-capacity claim, *Gorzynski*, 596 F.3d at 107; the § 1983 claims, *Back*, 365 F.3d at 123; and the NYHRL claims. *Sutera v. Schering Corp.*, 73 F.3d 13, 16 n.2 (2d Cir. 1995). Therefore, the Court will analyze the evidence related to these claims together.

Under *McDonnell-Douglas*, plaintiff bears the initial burden of establishing a prima facie case of discrimination. *Gorzynski*, 596 F.3d at 106. That burden is not difficult—"[o]ne might characterize it as minimal." *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 134 (2d Cir. 2000). If

---

[9] Plaintiff also has brought a claim for hostile work environment based upon retaliation which cannot survive summary judgment for the reasons discussed *infra*.

plaintiff establishes a prima facie case, the burden shifts to defendants to articulate "some legitimate, nondiscriminatory reason" for their action. *Gorzynski*, 596 F.3d at 106 (citation and quotation omitted). Once defendants provide such a reason, the plaintiff "'must prove, by a preponderance of the evidence, that age was the "but-for" cause of the challenged adverse employment action' and not just a contributing or motivating factor." *Id*. (quoting *Gross v. FBL Fin. Servs.,* 557 U.S. 167, 180 (2009)).[10]

---

[10] *Gross* was an ADEA disparate-treatment case, but subsequent cases suggest that it applies to a retaliation case as well, both under the ADEA and the NYHRL. In *Fried v. LVI Servs., Inc.*, the Second Circuit noted that "the same word—'because'— relied on by *Gross* to support the conclusion that but-for causation is necessary to an ADEA disparate treatment claim . . . is also found in the statute's retaliation provision." 500 F. App'x 39, 41 (2d Cir. 2012). The *Fried* Court did not decide the question because it found that the evidence was insufficient under either a but-for or "motivating factor" analysis. *Id*. Since *Fried*, the Supreme Court has held that but-for causation applies to retaliation claims under Title VII, *see Univ. of Tex. S.W. Med. Ctr. v. Nassar*, -- U.S. -- 133 S.Ct. 2517, 2534 (2013), and both parties in this case have assumed that the holding answers any remaining questions under the ADEA. With respect to the NYHRL, the Second Circuit assumed without deciding in *Gorzynski* that *Gross*'s "but-for" causation standard applied to the NYHRL also. 596 F.3d 105 n.6. This Court adopts the same assumption. With respect to § 1983, it does not appear that the Second Circuit has considered whether *Gross* applies, but since § 1983 is analyzed under the same *McDonnell Douglas* framework as ADEA claims, it is logical to apply the same but-for standard. *See Fairley v. Andrews*, 578 F.3d 518, 525-26 (7th Cir. 2009) (requiring but-for causation under § 1983 and holding that "unless a statute such as the Civil Rights Act of 1991 provides otherwise, demonstrating but-for causation is part of the plaintiff's burden in all suits under federal law.").

i.    Prima Facie Case

At the outset, it is important to clarify that the thrust of plaintiff's amended complaint is a claim of retaliation: his allegations suggest that the primary reason for his non-reappointment was that SUNY(F) officials wanted to be rid of him because he was suing the school. Nonetheless, plaintiff also asserts separate disparate treatment and hostile work environment claims which do not survive scrutiny under *McDonnell Douglas*, and the Court turns first to these claims.

To establish a prima facie case of disparate treatment, plaintiff must show that: (1) he was within the protected age group, (2) he was qualified for the position, (3) he experienced an adverse employment action, and (4) such action occurred under circumstances giving rise to an inference of discrimination. *Gorzynski*, 596 at 107. Though plaintiff's burden to establish a prima facie case is low, he has not met it concerning the fourth element, the inference of discrimination. Plaintiff was clearly treated differently than many other candidates for reappointment, but he has not identified evidence to suggest that the reason for the different treatment was his age, as opposed to his prior litigation. For example, of the many candidates to which plaintiff compares himself, he only cites two who were not in the age-protected category, and both were from different departments. (PCS ¶¶ 304-05, 318.); *see also Zahorik*, 729 F.2d at 93 ("A denial of tenure by [one] department simply cannot be compared with a grant of tenure in [other] departments.") One was not evaluated during the same year as plaintiff, and the other younger comparator was recommended for re-appointment along with twenty other candidates about whom there is no evidence concerning age. *Accord Blasi v. N.Y. City*

*Bd. of Educ.*, Nos. 00-CV-5320 (RRM)(MDG), 03-CV-3836 (RRM)(MDG), 2012 WL 3307227, at *17 (E.D.N.Y. Mar. 12, 2012) ("[T]he hiring of other teachers of the same protected category as plaintiff weighs against finding a *prima facie* case.") Moreover, many of plaintiff's evaluators were themselves in the age-protected category, and although that fact is not conclusive, it is persuasive here, since it applies to nine defendants, some of whom were very close to plaintiff's age or even older than him. (Def. 56.1 ¶¶ 37, 44, 50, 57, 62, 67, 70, 104, Keen Aff. ¶ 5); *see also Chuang v. T.W. Wang, Inc.*, 647 F. Supp. 2d 221, 233 (E.D.N.Y. 2009) (citation omitted). In short, plaintiff has simply failed to put forth any evidence of age discrimination with respect to the denial of reappointment and termination, and thus this claim cannot survive summary judgment. Even if the evidence is construed in the light most favorable to plaintiff, a reasonable jury could not conclude that age discrimination (separate from the alleged retaliation) was the but-for cause of plaintiff's firing. Accordingly, the Court grants summary judgment with respect to the ADEA, § 1983, and NYHRL claims alleging disparate treatment based upon age.

The supplemental complaint also asserts a claim under the NYHRL based upon an allegedly retaliatory hostile work environment. However, that claim also cannot survive summary judgment. There are simply no facts that would allow a reasonable jury to conclude that plaintiff's "'workplace [was] permeated with discriminatory intimidation, ridicule, and insult . . . sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Anagnostakos v. N.Y. State Div. of Human Rights*, 846 N.Y.S.2d 798, 993 (N.Y. App. Div. 2007). Therefore,

summary judgment is granted to the defendants as to the hostile work environment claim under the NYHRL.

Turning to the gravamen of the supplemental complaint, a prima facie case of retaliation requires a showing that "(1) the plaintiff was engaged in an activity protected under the ADEA; (2) the employer was aware of the plaintiff's participation in the protected activity; (3) the plaintiff was subject to an adverse employment action; and (4) there is a nexus between the protected activity and the adverse action taken." *Wanamaker v. Columbian Rope Co.*, 108 F.3d 462, 465 (2d Cir. 1997); *see also Hicks*, 593 F.3d at 164 (applying the same analysis to § 1983 Equal Protection and NYHRL claims).

Plaintiff has established a prima facie case of retaliation. There is no dispute that the first three elements are met: plaintiff filed the prior lawsuit on January 30, 2009; that litigation was generally known around the school (and certainly known to the five defendants named in that case and in this one); and plaintiff was terminated on August 26, 2011.

Construing the evidence most favorably to plaintiff, the evidence also satisfies the fourth element and shows a nexus between his filing of the prior lawsuit in January 2009, and his termination more than two years later. Although this is a relatively long period of time between the protected activity and the adverse action, the duration of time is just one method of proving retaliation. *Gordon v. N.Y. City Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000). Plaintiffs may also prove a nexus "through other circumstantial evidence," *id.*, which here would include the fact that plaintiff was the only one of 21 departmentally-recommended candidates who was not

reappointed, and the only one who was suing the school. Moreover, as is discussed in more detail below, plaintiff was the only candidate ever terminated immediately pursuant to the buy-out clause. Construed most favorably to plaintiff, this evidence, as well as the other evidence in the record, suffices as a *de minimis* showing that there was a nexus between plaintiff's protected activity and his non-reappointment and termination, and that the adverse actions took place under circumstances giving rise to an inference of retaliation.

### ii. Legitimate Reason

"If a plaintiff sustains the initial burden, a presumption of retaliation arises. In turn, under the second step of the burden-shifting analysis, the onus falls on the employer to articulate a legitimate, non-retaliatory reason for the adverse employment action." *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005). Defendants have repeatedly contended that plaintiff's scholarship was inadequate, and specifically that his failure to publish peer-reviewed academic works led to his being denied reappointment. Although plaintiff argues that two conference presentations satisfied the scholarship requirement, defendants counter that there is evidence in the record to support their position. (Ex. 2-7 to Greenwald Dep. 356-57.) In any event, plaintiff's alleged shortcomings in scholarship constitute a legitimate, non-retaliatory reason for defendants' actions. *See, e.g.*, *Tori v. Marist Coll.*, 344 F. App'x 697, 700 (2d Cir. 2009) (affirming grant of summary judgment where college's stated reason was inadequate scholarship); *Lieberman v. Gant*, 630 F.2d 60, 65 (2d Cir. 1980) ("[T]he defendants here could have sustained their burden of going forward at the second stage of the case simply by calling a knowledgeable witness who would

testify, with whatever supporting evidence was deemed desirable, that the denial of tenure to Dr. Lieberman was based on the belief that she had not demonstrated the high degree of scholarship necessary for the award of tenure.").

### iii. Pretext

"After the employer articulates legitimate, non-discriminatory reasons for the employee's discharge, the employee must be afforded an opportunity to prove the existence of factual issues demonstrating that the stated reasons were merely a pretext for discrimination." *Meiri v. Dacon*, 759 F.2d 989, 997 (2d Cir. 1985). At this point, the Court must draw reasonable inferences in plaintiff's favor, but plaintiff must put forth evidence on which to base those inferences. *See Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000) ("[U]nsupported allegations do not create a material issue of fact."); *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000) ("[W]e have reiterated that trial courts should not treat discrimination differently from other ultimate questions of fact.") (internal citations and quotation marks omitted).

Plaintiff's allegations concerning the other candidates for reappointment—which compare their credentials to his and highlight their own shortcomings in scholarship—do not alone establish pretext, especially in light of the subjective criteria involved in university hiring. "The Second Circuit has noted repeatedly that tenure decisions involve unique factors which set them apart from ordinary employment decisions, and federal courts should exercise caution in reviewing them." *Grant v. Cornell Univ.*, 87 F. Supp. 2d 153, 157 (N.D.N.Y. 2000) (collecting cases). The same concerns are present with respect to

reappointment. *See Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 455 n.7 (2d Cir. 1999) ("[C]ourts ... should not substitute their judgment for that of the college with respect to the qualifications of faculty members for promotion and tenure.") (quoting *Kunda v. Muhlenberg Coll.*, 621 F.2d 532, 548 (3d Cir. 1980)); *see also Faro v. New York Univ.*, 502 F.2d 1229, 1231 (2d Cir. 1974) ("Of all fields which the federal courts should hesitate to invade and take over, education and faculty appointments at a University level are probably the least suited for federal court supervision."). Moreover, the Second Circuit has instructed that "to infer discrimination from a comparison among candidates is to risk a serious infringement of first amendment values." *Lieberman*, 630 F.2d at 67.

On the other hand, impermissible bias will rarely manifest itself in obvious ways, particularly among sophisticated parties. *Jalal v. Columbia Univ. in City of N.Y.*, 4 F. Supp. 2d 224, 235 (S.D.N.Y. 1998). "Thus, courts must remain alert to the fact that subtle, yet rational inferences of bias may sometimes be drawn from ambiguous comments, and that this is at least as true in academia as it is in any other field." *Id.* "It is our task, then, to steer a careful course between excessive intervention in the affairs of the university and the unwarranted tolerance of unlawful behavior." *Powell v. Syracuse Univ.*, 580 F.2d 1150, 1154 (2d Cir. 1978).

In other words, courts in this circuit are watchful for discrimination in university hiring, but allegations of pretext based on candidate comparisons alone are insufficient, particularly where (as here) the other candidates are from various departments. The Second Circuit demonstrated the proper approach in *Lieberman*, where it declined to consider

plaintiff's analysis of successful male candidates "in the absence of independent evidence of discriminatory intent or a claim that plaintiff's qualifications were clearly and demonstrably superior." 630 F.2d at 68. Here, plaintiff has not claimed that his qualifications were clearly and demonstrably superior, only that they were no worse than those of some other candidates. *Cf. Rijaravivarma v. Bd. of Trs. for Conn. State Univ. Sys.*, 862 F. Supp. 2d 127, 162 (D. Conn. 2012). Thus, the Court will focus its analysis on the independent evidence that defendants' stated reason for firing plaintiff was a pretext for their unlawful retaliatory motive.

Plaintiff has identified independent evidence that, in a light most favorable to him, three defendants harbored retaliatory intent: Keen, Cepriano, and Vogel. For the reasons discussed below, the Court denies summary judgment with respect to the retaliation claims against these three defendants under the NYHRL, as well as the claim (for injunctive relief) under the ADEA and § 1983 against Keen in his official capacity, and grants summary judgment on the retaliation claims against all other defendants.

a. Keen

Construing the evidence most favorably to plaintiff, a reasonable jury could conclude that Keen intended to retaliate against plaintiff. Plaintiff was the only candidate ever terminated by Keen pursuant to the buy-out clause (Pl. 56.1 ¶ 253)[11] and, based

_____

[11] Five other faculty members were notified at the same time as plaintiff that their term appointments would not be renewed, and all five were appointed to full-time visiting professorships. (Pl. 56.1 ¶¶ 254-56.)

upon the evidence in the record, there is a genuine issue of fact as to whether plaintiff's litigation against the school was the but-for cause of Keen's decision. Keen stated that he exercised the buy-out power "in part because he felt that Plaintiff was disrupting the proper functioning of the School of Business and the College as a whole." (*Id.* ¶ 257.) In his deposition, Keen was unable to cite anything disruptive about plaintiff other than his litigation against the school, which Keen felt created "an atmosphere of legal issues [that] tends to cause faculty members to withdraw from involvement." (*Id.* ¶ 258; Keen Dep. at 126). If plaintiff's evidence is credited and all reasonable inferences are drawn in his favor, a rational jury could conclude that Keen's comments show that plaintiff's litigation was the but-for cause of his immediate termination, and the comments and other evidence in the record create a genuine issue for trial concerning whether Keen chose not to re-appoint plaintiff for the same purpose.[12]

b. Cepriano

There is also independent evidence with respect to Cepriano that, if credited and construed most favorably to plaintiff, would allow a reasonable jury to conclude that her comments about plaintiff's scholarship were pretextual. Before she declined to recommend plaintiff for reappointment, Cepriano allegedly commented that plaintiff's litigation was a "huge amount of trouble" and a "big problem," although it is unclear when these comments occurred. (Keen Dep. at 51.) In addition, Keen consulted with Cepriano before deciding to exercise the buy-out provision, and the circumstances surrounding the decision could allow a jury to reasonably infer that she harbored the same retaliatory animus as Keen. (*Id.* at 123.) Although Cepriano did not herself terminate plaintiff, her role in his termination may constitute an adverse action in its own right or, recalling that the only remaining claim against Cepriano is under the NYHRL, she could be liable for aiding and abetting retaliation by Keen, since she was the primary person who advised Keen on the decision to exercise the buy-out clause.[13] (Keen Dep. at 123.)

c. Vogel

If the evidence is construed most favorably to plaintiff, a rational jury also could conclude that Vogel harbored a retaliatory motive, and aided in the adverse employment actions. During his tenure as CCTA chair, Vogel was heard to ask

---

[12] The decisions not to re-appoint plaintiff, and to terminate him immediately, are distinct, but a reasonable jury could conclude that either was the product of unlawful retaliation. "We have said that there are no bright-line rules with respect to what constitutes an adverse employment action for purposes of a retaliation claim, and therefore courts must pore over each case to determine whether the challenged employment action reaches the level of 'adverse.'" *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 721 (2d Cir. 2010) (internal citation and quotation marks omitted).

---

[13] The Court notes that a cat's paw theory of liability would be available to plaintiff under federal law. *See Smith v. Bray*, 681 F.3d 888, 898 (7th Cir. 2012) ("[A]t least five circuits have indicated that a cat's paw theory would support imposing *individual* liability under § 1983 on subordinate governmental employees with unlawful motives who cause the real decision-makers to retaliate." (emphasis in original)). The only cause of action against Cepriano in her individual capacity is a state-law claim under the NYHRL, and neither party has addressed whether that statute allows plaintiff to pursue a cat's paw theory. The Court need not decide that question for the purposes of this summary-judgment motion because there is sufficient evidence, independent of that theory, to allow the claim to survive summary judgment.

rhetorically whether "we want someone who is FOILing everybody." (Reganse Dep. at 47.) Although this comment did not occur in the context of plaintiff's reappointment—it appears to be connected to a different committee—a reasonable jury could conclude, in combination with the other evidence in the record, that it shows an animus by Vogel which could affect any employment decision he made about plaintiff. *See Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 69 (2d Cir. 2001) ("[A]n extra measure of caution is merited . . . in a discrimination action because direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence found in affidavits and depositions.").

   d.  Havlovic

   Plaintiff has not identified independent evidence that Havlovic was motivated by an unlawful animus. Instead, he argues that Havlovic must remain a party to this action because plaintiff disagrees with the manner in which he conducted his review of plaintiff's credentials, and because other SUNY(F) officials exerted improper influence over him.

   Concerning Havlovic's review process, the Second Circuit has repeatedly discouraged courts from second-guessing the subjective analysis of scholars and administrators like Havlovic in the absence of unlawful discrimination. *See, e.g.*, *Bickerstaff*, 196 F.3d at 455 n.7 ("Determinations about such matters as . . . research scholarship . . . are subjective, and unless they can be shown to have been used as the mechanism to obscure discrimination, they must be left for evaluation by the professionals.") (quotation omitted). Even in a light most favorable to him, plaintiff has not identified facts from which a reasonable jury could conclude that Havlovic's review

was a mechanism to obscure discrimination, or that he bore any unlawful animus toward plaintiff. Havlovic is perhaps unique among defendants in that he had no connection to plaintiff or his litigation history, and little connection to any other defendant.

   Plaintiff's argument about the influence of other SUNY(F) officials on Havlovic focuses on his contact with Gilbertson, but in an abundance of caution, the Court has construed the argument more broadly to include whether Vogel and Cepriano, whose negative recommendations were among the materials submitted to Havlovic, could have infected his review with discrimination. In the Second Circuit, "the impermissible bias of a single individual at any stage of the promoting process may taint the ultimate employment decision . . . . even absent evidence of illegitimate bias on the part of the ultimate decision maker, so long as the individual shown to have the impermissible bias played a meaningful role in the . . . process." *Bickerstaff*, 196 F.3d at 450. Put differently, "an employer cannot shield itself from liability . . . by using a purportedly independent person or committee as the decisionmaker where th[at] decisionmaker merely serves as the conduit, vehicle, or rubber stamp by which another achieves his or her unlawful design."[14] *Dedmon v. Staley*, 315 F.3d 948, 949 n.2 (8th Cir. 2003).

_____

[14] This is sometimes referred to as the "cat's paw" approach. To date, the Second Circuit "has neither accepted nor rejected the cat's paw approach." *Nagle v. Marron*, 663 F.3d 100, 118 (2d Cir. 2011); *see also Kregler v. City of New York*, -- F. Supp. 2d --, No. 08 Civ. 6893(VM), 2013 WL 6620767, at *7 (S.D.N.Y. Dec. 9, 2013) ("The development of Second Circuit case law concerning the cat's paw theory is relatively new and evolving."). Nonetheless, district courts within the Circuit have accepted cat's paw theories of liability, and this Court agrees with those decisions. *See Kregler*, 2013 WL 6620767 at *7 n.5.

Plaintiff's argument is essentially that Havlovic became a conduit for discrimination by Vogel, Cepriano, and Gilbertson. Even if the Court, accepts the factual inferences necessary to support his argument, however, it does not decide the question of Havlovic's individual liability. *Bickerstaff* was a case involving one defendant—Vassar College—and the language quoted above was in reference to the possibility of vicarious liability for the college based on the conduct of a lower-level employee. As such, the question in *Bickerstaff* and cases citing it is proximate cause—whether a discrimination by a lower-level employee can be said to have "caused" the ultimate adverse employment action. Plaintiff has not cited a case extending this point to suggest that, simply because a lower-level official's discrimination is enough to satisfy proximate cause for vicarious liability, it is also enough to subject a higher-level official to individual liability. Courts in other circuits have held subordinates individually liable even while concluding that the ultimate decisionmaker acted with a permissible motive. *See, e.g.*, *Tejada-Batista v. Morales*, 424 F.3d 97, 101-02 (1st Cir. 2005).

Although it does not appear that the Second Circuit has explicitly distinguished the significance of subordinate bias for proximate cause purposes and the role, if any, it plays in the individual liability of higher-level decisionmakers, it has done so implicitly. In *Back v. Hastings On Hudson Union Free School District*, the Court affirmed the denial of summary judgment with respect to two individual supervisors who recommended that the plaintiff be fired, while affirming the grant of summary judgment with respect to the Superintendent who cited the supervisors' recommendations as a reason for his own negative recommendation. 365 F.3d at 126. Even

though it was clear that the discriminatory supervisors had influenced the Superintendent's decision to such a degree that they might have caused the plaintiff's firing, the supervisors' discrimination did not create individual liability against the Superintendent absent evidence that he himself bore any unlawful animus against the plaintiff. *Id.* at 127. On the contrary, the Superintendent appeared to be a neutral evaluator: he had performed an independent review of the plaintiff's credentials, and "[t]here [was] no indication that . . . his investigation [was] undertaken with a jaundiced eye." *Id.*

Likewise here, there is no evidence that Havlovic performed his independent review with a jaundiced eye, and the recommendations of Vogel and Cepriano appear to have been among many factors that he considered. (As is discussed below, Gilbertson did not make a recommendation and appears to have had no substantive influence on Havlovic.) Under these circumstances, any unlawful discrimination by Vogel and Cepriano, even if causal with respect to plaintiff's non-reappointment and sufficient to subject them to individual liability, does not eliminate the basic requirement that Havlovic must have personally engaged in an intentional act of discrimination in order to remain a party to this action. *See Back*, 365 F.3d at 127; *see also Edwards v. Jericho Union Free Sch. Dist.*, 904 F. Supp. 2d 294, 305-06 (E.D.N.Y. 2012) (dismissing NYHRL claim against individual for whom personal involvement was not alleged); *Conklin v. Cnty. of Suffolk*, 859 F. Supp. 2d 415, 437 (E.D.N.Y. 2012) (granting summary judgment on an aiding-and-abetting claim under the NYHRL because the defendant did not participate in the alleged retaliation). The Court therefore grants summary

judgment with respect to Havlovic in his individual capacity.

e. Remaining defendants

A reasonable jury could not conclude that there is independent evidence of discrimination by the remaining defendants. In a light most favorable to him, the evidence that plaintiff cites still lacks the "concrete particulars" required to show pretext and survive summary judgment. *R.G. Grp.*, 751 F.2d at 77.

Plaintiff directs much of his attention to Greenwald and Federman, but the evidence does not indicate that their conduct was retaliatory. Greenwald's "copyright" comment, standing alone in a document, does not reveal any motive, let alone an impermissible one. With respect to Federman, plaintiff contends simply that her observation report was too long. He cites no case where a similar act has been found indicative of unlawful discrimination, and there appears to be nothing improper about the report or Federman's conduct generally. In fact, Federman recommended plaintiff's re-appointment, despite her reservations.

Two sets of defendants remain: the lawyers (Ellerman and Gilbertson) and the CCTA members other than Vogel. Taking the lawyers first, plaintiff has not identified facts to indicate that either intended to discriminate or retaliate against him. Ellerman worked at SUNY, not SUNY(F), and plaintiff's only argument with respect to her is that Gilbertson kept her apprised of events at SUNY(F), which is not evidence of retaliation. Plaintiff focuses more on Gilbertson, who, as campus counsel at SUNY(F), plaintiff contends was subject to a categorical conflict of interest in all matters concerning plaintiff. Plaintiff has not cited legal authority for that view, and

the Court disagrees that Gilbertson was wrong to involve himself in plaintiff's reappointment. On the contrary, it is undisputed that the purpose of Gilbertson's involvement was "to ensure that Havlovic was not influenced, in any way, by College personnel." (Def. 56.1 ¶ 110.) That is an appropriate job for an attorney, and plaintiff's allegations about Gilbertson's limited correspondence with Havlovic do not suggest that either defendant ever crossed the line. The emails provided in the record show, at most, that Gilbertson encouraged Havlovic to clarify his reasoning in a document that was likely to end up in litigation, but there is no evidence that Gilbertson influenced Havlovic's ultimate decision in any way. (Ex. 2-12 to Havlovic Dep.) Thus, plaintiff has likely not even established a prima facie case with respect to Ellerman and Gilbertson; in any event, no reasonable jury could conclude that either retaliated against plaintiff.

Finally, the claims against the remaining CCTA members must also be dismissed, because, even in a light most favorable to plaintiff, the evidence does not suggest that the members' voted against plaintiff for a discriminatory or retaliatory reason. None of the CCTA members besides Vogel knew plaintiff personally or were aware of the details of his litigation history at the time of the first vote. (Def. 56.1 ¶¶ 35, 36, 41, 43, 48, 49, 53, 56, 60, 61, 65, 66.) Plaintiff later provided a letter describing his history (Pl. 56.1 ¶ 69(a)), but since it came from him to the CCTA, it is difficult to conclude that any member's knowledge alone suggests a retaliatory purpose. At most, it appears that the members' stated purpose—that plaintiff lacked in research scholarship, among other areas—is a subjective and debatable one. That does not make it pretextual, however, and a reasonable jury could not conclude

that the CCTA members engaged in retaliation.

D.  Other state-law claims

The supplemental complaint also contains state-law defamation and breach of contract claims. Summary judgment is granted with respect to both, except the breach of contract claim against Keen in his individual capacity.

i.  Defamation

The defamation claim is based on the theory that Greenwald's "copyright" comment was false and defamatory. This cause of action suffers from at least two deficiencies. First, the "copyright" comment is an expression of opinion, not fact, and thus cannot be the subject of an action for defamation. *Mann v. Abel*, 10 N.Y.3d 271, 276 (2008) (citation omitted). Whether an individual statement is one of fact or opinion is a question of law, and New York courts consider the following factors:

(1) whether the specific language in issue has a precise meaning which is readily understood; (2) whether the statements are capable of being proven true or false; and (3) whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to signal . . . readers or listeners that what is being read or heard is likely to be opinion, not fact.

*Id.* (citations omitted).

Applying those factors to Greenwald's "copyright" comment, even if the Court assumed that plaintiff met the first two factors with his arguments concerning the legality of his online publication, the third factor weighs heavily against him. In context, the "copyright" comment is one clause in one sentence of a much longer document expressing Greenwald's opinions about plaintiff as a teacher. Like most of the rest of the document, the "copyright" comment is an expression of opinion. The words used—"*may* be copyright infringement"—signaled to readers that the comment was not a statement of fact. (Ex. 2-D to Pl. Dep.) (emphasis added). Thus, the "copyright" comment is not a false statement under New York law and cannot be the basis for a defamation claim.

Second, even if the comment was a statement of fact, "New York affords qualified protection to defamatory 'communication[s] made by one person to another upon a subject in which both have an interest.'" *Stillman v. Ford*, 22 N.Y.2d 48, 53 (1968) (citation omitted). This privilege includes "[c]ommunications by supervisors or co-workers made in connection with the evaluation of an employee's performance, including allegations of employee misconduct and communications regarding the reasons for an employee's discharge." *Albert v. Loksen*, 239 F.3d 256, 272 (2d Cir. 2001). The Second Circuit has described some circumstances in which the privilege may not apply:

A defendant forfeits this qualified privilege by making a false, defamatory statement with "malice" of either the common-law or constitutional variety. . . . Common-law malice "mean[s] spite or ill will," . . . and defeats the privilege only if it is "the one and only cause for the publication" . . . . Constitutional or "actual" malice means publication with "knowledge

that [the statement] was false or . . . reckless disregard of whether it was false or not." . . . "Reckless disregard" as to falsity means that the statement is "'made with [a] high degree of awareness of [the publication's] probable falsity'" or while "'the defendant in fact entertained serious doubts as to the truth of [the] publication.'"

*Id.*

Plaintiff has not identified evidence to show that Greenwald acted with malice, and a reasonable jury could not conclude that she did. Thus, the Court grants summary judgment on the defamation claim.

ii.     Breach of Contract

As previously discussed, the Eleventh Amendment bars any state-law claim against the defendants in their official capacities. *Shibeshi*, 531 F. App'x at 135-36. The only defendant to sign the Stipulation in his individual capacity was Keen.

Plaintiff identifies two provisions as having been breached. The first requires SUNY(F) to consider plaintiff's education and professional status as of 2007 to be sufficient for the education requirement of his next reappointment (Stip. ¶ 3(d)), and it is unclear how Keen may have breached this provision. The only concerns raised about plaintiff's educational achievement (his lack of progress toward a doctorate) emerged from the CCTA. The closest advisors to Keen—Cepriano and Havlovic—focused exclusively on plaintiff's deficient scholarship and college-wide service, and concerns about plaintiff's degree do not appear to have affected Keen's conduct in any way.

The second Stipulation provision on which plaintiff relies requires that his future reappointment be conducted in compliance with SUNY policies and by-laws, and the applicable collecting bargaining agreement. (Stip. ¶ 3(f).) Plaintiff's theory is that the CCTA broke faculty by-laws when it began voting on reappointment portfolios, instead of acting only as an appeal mechanism for candidates who were not recommended by their departments. The appeal function is described in the relevant by-laws, which do not state that the CCTA may vote on reappointment candidates, although they do allow the CCTA to vote on tenure candidates. (Ex. 2-5 to Havlovic Dep. at 328.) Plaintiff argues that this distinction forbids the CCTA from voting on reappointment candidates, but neither the text of the by-laws nor the available deposition testimony about them supports that view.[16]     The by-laws themselves describe the first function of the CCTA as "[t]o formulate, initiate, and periodically review procedures for departmental evaluation of candidates for term and continuing appointments," suggesting that the CCTA has discretion with respect to both types of appointments. (*Id.*) The "Procedures" section of the by-laws also suggests that issuing recommendations is an important part of the CCTA's role: that section provides that the CCTA "shall convey its findings and recommendations to the President and to each candidate," with no distinction between reappointment and

---

[16] Although the Court denies plaintiff's motion to strike the Affidavit of Barbara Serr, which contains her analysis of the by-laws, the Court does not rely on Serr's analysis in reaching its conclusion that Keen did not breach the Stipulation, and relatedly, that plaintiff was not denied procedural due process. The Court has independently examined the by-laws and deposition testimony.

tenure candidates. (*Id.* at 329) Finally, plaintiff asked several witnesses about the by-laws and the CCTA's role, including a witness who no longer serves on the CCTA and had no connection to these events. No witness ever stated that the CCTA's choice to vote on reappointment portfolios was a violation of the by-laws. (*See* Capella, Vogel, Giffone Deps.) For these reasons, a reasonable jury could not conclude that the CCTA breached the faculty by-laws, and *a fortiori* could not conclude that Keen breached the Stipulation.

### E. Conclusion

Summary judgment is denied with respect to the retaliation claims against Keen in his official capacity under the ADEA and § 1983, and the NYHRL retaliation claims—under both sections 296(1) and 296(6)[17]—in his individual capacity. Summary judgment is also denied with respect to both NYHRL retaliation claims against Cepriano and Vogel in their individual capacities. Summary judgment is granted with respect to all other causes of action and defendants.

### III. OTHER MOTIONS

Plaintiff has also moved the Court to: impose sanctions for spoliation and attorney misconduct, compel production of documents withheld under the attorney-client privilege, and strike portions of an

affidavit. For the reasons discussed below, all four motions are denied.

### A. Spoliation

Plaintiff seeks spoliation sanctions because Gilbertson deleted emails between himself and: Havlovic, SUNY(F) officials, other SUNY officials, and litigation counsel. A spoliation inference is available if plaintiff establishes that: (1) relevant evidence is destroyed, (2) with culpability, (3) when the defendant was under a duty to preserve the evidence. *See Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 107-09 (2d Cir. 2001) (quoting *Kronisch v. United States*, 150 F.3d 112, 128 (2d Cir. 1998)). Ordinary negligence is sufficient for a finding of a culpable state of mind.

With respect to the emails between Gilbertson and Havlovic, and Gilbertson and SUNY(F) officials, plaintiff has not met his burden to establish the first prong, that evidence was destroyed, because defendants produced all the same emails from Havlovic and SUNY(F) officials who did not delete them. *See Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 218 (S.D.N.Y. 2003) ("A party or anticipated party must retain all relevant documents (but not multiple identical copies)"); *In re Pfizer Inc. Sec. Litig.*, 288 F.R.D. 297, 323 (S.D.N.Y. 2013) ("[G]iven that these emails were ultimately produced, it cannot be said that they were improperly lost or destroyed."). Plaintiff argues that the same emails from other sources would not show whether Gilbertson used the blind-copy function on any emails, but there is no indication in the record that Gilbertson ever did so. For example, in the large amount of email produced from other parties, plaintiff has not identified an email where Gilbertson used that function, and Gilbertson has said that it was not his usual practice. (Gilbertson Aff. ¶ 5.) There is simply no evidence supporting the existence

---

[17] Although courts in this circuit have expressed skepticism concerning whether a defendant like Keen could be held liable for aiding and abetting the discrimination of SUNY(F), when his own conduct would serve as the predicate for SUNY(F)'s liability, that possibility has not been foreclosed by any case of which this Court is aware. *See Conklin*, 859 F. Supp. 2d at 436.

of blind-copy emails or a reason to believe that they would be relevant if they did exist.

Plaintiff also argues that Gilbertson improperly deleted email from the broader discovery period spanning 2010 into 2012. Unlike the email discussed above, much of this email does not appear to have been produced from other sources, but such email would still have to be relevant to be the subject of sanctions. Relevance may be inferred from a sufficiently culpable state of mind, as in cases where documents were destroyed in bad faith, or under "some circumstances" where defendants were grossly negligent in destroying documents. *See Residential Funding,* 206 F.3d at 109. Relevance may also be established through extrinsic evidence tending to show that the missing evidence would have been relevant and favorable to the moving party. *See id.; Scalera*, 262 F.R.D. at 178.

Plaintiff has not proved relevance by either method. Gilbertson's deletion of the email was not done in bad faith, but was instead part of his normal practice. He placed a litigation hold on the actual decisionmakers with respect to plaintiff's reappointment and termination, but that did not include himself because he had a limited, non-decisive role in the termination. Furthermore, as an attorney, he considered his own communications to be privileged and work product, and he believed that any email not covered by these doctrines would be preserved by the parties subject to the litigation hold, making his own preservation redundant. (Gilbertson Aff. ¶¶ 14-17.) Neither Gilbertson nor any attorney in his office had ever been placed on a litigation hold, which suggests that he did not bear particular bad faith toward plaintiff. (*Id.* ¶ 16); *see also Toussie v. Cnty. of Suffolk*, No. 01-CV-6716(JS)(ARL), 2007 WL 4565160, at *8 (E.D.N.Y. Dec. 21, 2007) (finding that failure to implement litigation hold "does not rise to the egregious level seen in cases where relevance is determined as a matter of law").

Plaintiff also has not shown by extrinsic evidence that the deleted emails would be relevant and favorable to him. He has attempted to do so by reiterating his arguments concerning Gilbertson's alleged influence on Havlovic. As discussed earlier in this opinion, however, the available evidence does not support plaintiff's theory. The Gilbertson-Havlovic emails cited by plaintiff show Gilbertson performing the neutral intermediary function he has described, and any input by him into Havlovic's final recommendation appears to have been a lawyer's attempt to ensure clarity in a document that was likely to end up in litigation. Since the emails most directly related to plaintiff's reappointment and termination do not support his theory concerning Gilbertson, plaintiff has not shown that additional emails from other points in time would be relevant.

Finally, plaintiff also argues that Gilbertson committed spoliation by deleting emails with SUNY officials and litigation counsel. There are no indicia of bad faith or relevance concerning these emails, and the Court concludes that sanctions are not appropriate.

B. Attorney Misconduct

Although plaintiff alleges attorney misconduct, there is no factual basis to support that allegation. "A court in the Second Circuit may impose sanctions if it finds, *with a high degree of specificity in its factual findings*, that there is clear evidence that the challenged actions are entirely without color and are taken for reasons of harassment or delay or for other improper

purposes." *Kensington Int'l, Ltd. v. Congo*, No. 03-Civ.-4578(LAP), 2007 WL 2456993, at *6 (S.D.N.Y. Aug 24, 2007) (citations omitted) (emphasis added). Plaintiff has not shown clear evidence that would allow this Court to make highly specific findings. He claims that state attorneys sought to influence a witness by attaching improper conditions to a settlement offer in another case, but plaintiff cannot name the attorney who made the offer, nor has he described exactly what was said, nor how that conduct could have revealed an improper purpose related to this litigation. Likewise, plaintiff's allegation that a SUNY attorney inquired about representing the same witness when he was deposed in this action is insufficient for this Court to conclude that any misconduct occurred. Accordingly, the motion for sanctions is denied.

### C. Motion to Compel

Plaintiff has also moved to compel the production of emails withheld or redacted because defendants contend they are attorney work product or protected by the attorney-client privilege. At the oral argument on November 18, 2013, the Court ordered defendants to produce these emails for *in camera* review. Having reviewed the emails, the Court concludes that the majority involve SUNY(F) officials seeking or receiving legal advice from Gilbertson, and these emails are protected by the attorney-client privilege. To the extent that the same emails contain communications from Gilbertson and the litigation counsel, those communications show the attorneys' mental processes and opinions in advising their clients about the proper way to carry out plaintiff's non-reappointment and termination in light of the Stipulation and applicable law. *See generally United States v. Adlman*, 134 F.3d 1194, 1197 (2d Cir. 1998) ("Special treatment for opinion work

product is justified because, '[a]t its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case.'" (quoting *United States v. Nobles*, 422 U.S. 225, 236 (1975))). Accordingly, the communications from Gilbertson are protected as attorney work product, and plaintiff has not made a "showing of substantial need" as required by Rule 26(b)(3)(A)(ii) of the Federal Rules of Civil Procedure. His motion to compel is denied.

### D. Motion to Strike

Plaintiff also moves to strike portions of an affidavit submitted by Assistant to the Provost Barbara Serr, which contains Serr's interpretation of faculty by-laws and SUNY policies.

Plaintiff argues that Serr is not competent to offer much of the analysis contained in her affidavit, and that her statements are inadmissible hearsay. "Whether to grant or deny a motion to strike is vested in the trial court's sound discretion." *Pharmacy, Inc. v. Amer. Pharm. Partners, Inc.*, No. 05-CV-776 (DRH)(AKT), 2007 WL 2728898, at *1 (E.D.N.Y. Sept. 14, 2007). "The party moving to strike bears a heavy burden, as court generally disfavor motions to strike." *Id*.

Plaintiff has not met his burden to show that any portion of the affidavit should be stricken on grounds of competence or hearsay. Although Serr's first affidavit did not give a detailed professional history, the Court can infer that she is knowledgeable about the relevant by-laws and policies based on her position as Assistant to the Provost, her responsibility for maintaining files and records related to committees in

accordance with the by-laws and policies, and her more than forty years of experience at SUNY(F). (Serr. Aff. ¶¶ 1, 5); *see Folio Impressions, Inc. v. Byer CA*, 937 F.2d 759, 764 (2d Cir. 1991) ("The test is whether a reasonable trier of fact could believe the witness had personal knowledge."). Moreover, Serr's supplemental affidavit establishes that her professional experience has made her thoroughly familiar with the documents in question, and that she would be competent to testify about these documents as a lay or expert witness. (Supplemental Serr Aff. ¶¶ 6-9); *Cf. Spitzer v. St. Francis Hosp.*, 94 F. Supp. 2d 423, 427 (S.D.N.Y. 2000) (declining to strike affiant's analysis of department's policies and responsibilities and noting that "[a]ffiants may testify as to the contents of records they reviewed in their official capacity") (citation omitted).

Accordingly, the motion to strike is denied. In any event, the Court has independently analyzed the by-laws cited by plaintiff and Serr and reached the conclusions contained in this Memorandum and Order without reliance on Serr's expertise. *See Crown Heights Jewish Cmty. Council, Inc. v. Fischer*, 63 F. Supp. 2d 231, 241 (E.D.N.Y. 1999) ("To the extent that a Rule 56(e) affidavit contains inadmissible hearsay which references other evidence that is properly before the court, the court may disregard the hearsay but separately consider the admissible evidence.") (internal citations and quotation marks omitted).

## IV. CONCLUSION

Defendants' summary judgment motion is denied in part and granted in part. It is denied with respect to the official-capacity retaliation claim against Keen for injunctive relief under the ADEA and §1983, and the individual-capacity retaliation claim against

Keen under the NYHRL. It is also denied with respect to the individual-capacity NYHRL retaliation claims against Cepriano and Vogel. Summary judgment is granted with respect to all other causes of action and defendants. Plaintiff's four motions are denied in their entirety.


SO ORDERED.


_____
JOSEPH F. BIANCO
United States District Judge


Dated: March 28, 2014
Central Islip, NY


\* \* \*

Plaintiff is *pro se*. SUNY is represented by Mark J. Lemire, State University Plaza, Albany, NY 12246. All defendants are represented by Patricia Hingerton and John L. Belford, IV of the Office of the Attorney General, State of New York, Suffolk Regional Office, 300 Motor Parkway, Suite 205, Hauppauge, NY 11788.